THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
RONALD TONALDI, Defendant-Appellant.

First District (2nd Division)    No. 80-619

Opinion filed July 21, 1981.

Julius Lucius Echeles and Frederick F. Cohn, both of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Marcia B. Orr and Mark E. Thompson, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE DOWNING delivered the opinion of the court:

Defendant Ronald Tonaldi and two co-defendants were charged by indictment with unlawful possession of cocaine in excess of 30 grams and unlawful possession of pentobarbital. (Ill. Rev. Stat. 1977, ch. 56½, pars. 1402(a)(2), 1402(b).) Defendant and his co-defendants were represented by one retained lawyer. After a bench trial, defendant was found guilty of both charges. His co-defendants were found not guilty. Defendant was then sentenced to a term of 4 years. On appeal, defendant asks this court to consider (1) whether he was denied his constitutional right to effective counsel, (2) whether the state failed to prove defendant guilty of possession of cocaine in excess of 30 grams beyond a reasonable doubt, and (3) whether the trial court erred in sentencing defendant to a term of 4 years.

Undisputed testimony at trial indicates that on April 12, 1979, at approximately 12:30 a.m., defendant drove a white two-door Cadillac northbound through the intersection of Central Park and Chicago Avenue, Chicago. Co-defendants Daniel Brissa and Carol Masorlian were passengers in the car. Chicago Police Officers Michael Byrne and Leonard Ciangi were in their unmarked squad car when they observed defendant's car proceed through a red light. The squad car pursued defendant's car for almost three blocks before the Cadillac was curbed. Byrne approached the stopped car and asked defendant for his license. According to Byrne's testimony, the officer looked into the car and saw a dark-colored vinyl bag upon the seat between defendant and Masorlian. He saw a clear plastic bag containing a white powder protruding from the dark colored bag. He also testified he saw a clear plastic bag which contained a crushed leafy substance. Byrne told the car's occupants they were under arrest. A subsequent search of defendant revealed he possessed a loaded .25-caliber automatic pistol. Byrne examined the dark colored bag and found it contained 11 other bags. Five of those bags contained a white powder. A police department chemist subsequently testified he examined the five clear plastic bags and determined that the white powder was cocaine.

Co-defendant Masorlian testified as a defense witness that she had known defendant for two years before the date of her arrest. She occasionally worked for defendant. On the day prior to her early morning arrest, defendant drove her to work. Masorlian testified that when she entered defendant's car, she saw a dark vinyl bag partially under the car's front seat. She stated that when Byrne approached defendant's car, Byrne opened the left front door and then saw the bag under the seat. According to Masorlian, there were no clear plastic bags visible on top of the dark vinyl bag. Furthermore, she testified only bags containing a leafy substance fell from the bag during Byrne's examination of it.

## I

Defendant contends he is entitled to a new trial because his conviction resulted from ineffective assistance of counsel.[1] He argues his retained attorney's representation of co-defendant Masorlian created an actual conflict of interest that manifested itself at trial. The State argues defendant knowingly waived his right to separate defense counsel.

At trial the prosecuting attorney indicated to the court that there could be testimony consistent with preliminary hearing testimony which might raise a conflict of representation. Although defense counsel stated he did not believe a conflict existed, the trial court proceeded to admonish defendants regarding the hazards of a conflict resulting from their attorney's multiple representation. The trial court specifically asked defendant whether he had any objections to his retained counsel representing co-defendant Masorlian.[2] Defendant replied that he did not object.

■■ ■ The sixth amendment right to effective assistance of counsel is subject to waiver where the record supports the conclusion that defendant made a knowing and intelligent relinquishment of that right. (*People v. Robinson* (1979), 79 Ill. 2d 147, 166, 402 N.E.2d 157; see *Glasser v. United States* (1942), 315 U.S. 60, 71, 86 L. Ed. 680, 699, 62 S. Ct. 457, 465. See also *Edwards v. Arizona* (1981), ___ U.S. ___, 68 L. Ed. 2d 378, 101 S. Ct. 1880.) Although a trial court is not required to initiate inquiry into the propriety of multiple representation in every case (*Cuyler v. Sullivan* (1980), 446 U.S. 335, 346, 64 L. Ed. 2d 333, 344, 100 S. Ct. 1708, 1718; *People v. Berland* (1978), 74 Ill. 2d 286, 305, 385 N.E.2d 649, *cert. denied* (1979), 444 U.S. 833, 62 L. Ed. 2d 42, 100 S. Ct. 64), where actual conflict

---

[1] This issue was not included in defendant's written post-trial motion. Generally, the failure to include an issue in such a motion results in waiver of the issue. (*People v. Pickett* (1973), 54 Ill. 2d 280, 282, 296 N.E.2d 856.) However, Supreme Court Rule 615(a) does permit this court to review complaints that may affect substantial rights. (Ill. Rev. Stat. 1979, ch. 110A, par. 615(a).) It is within this light that we address the instant issue.

[2] The trial court inquired as follows:

"Mr. Tonaldi, the state is genuinely concerned because it would be unfair to you and your co-defendants that there might be some conflict between the three of you that would make it improper for you to have one lawyer. In other words, your attorney has to be concerned with your interests exclusively, and it would be very difficult for your attorney if he represents two defendants where the defense might be inconsistent and I don't know whether anybody is going to testify here, because you don't have to testify, but if some defendant of all defendants should testify and say something that was harmful to the other defendant that would be a conflict in the testimony probably, and it would be difficult for one lawyer to fairly represent all defendants when that occurs.
  ° ° °

Knowing that, do you have any objection to [the defense attorney] representing you and the other two defendants at the same time?"
Defendant responded, "No sir."

or the possibility thereof is brought to the court's attention, the court should thoroughly and carefully inform the defendant of the circumstances producing the possible conflict of interest and explain to the defendant the possible harm that could result to his defense. (*People v. Robinson.* See also *People v. Meredith* (1980), 84 Ill. App. 3d 1065, 1076, 405 N.E.2d 1306.) Any subsequent determination of whether there has been an intelligent waiver of the right to counsel must depend upon the particular facts and circumstances surrounding the purported waiver. *Johnson v. Zerbst* (1938), 304 U.S. 458, 464, 82 L. Ed. 1461, 1466, 58 S. Ct. 1019, 1023; *People v. Stoval* (1968), 40 Ill. 2d 109, 114, 239 N.E.2d 441.

Defendant claims the trial court's query regarding conflict of interest was not specific enough to properly inform him of the potential for conflict and its consequences. He compares the instant case with several cases which held no waiver occurred (see, *e.g., People v. Stoval*, at 113-14; *People v. Ware* (1968), 39 Ill. 2d 66, 68, 233 N.E.2d 421; *State v. Marion* (1978), 175 Conn. 211, 397 A.2d 533). The cases cited by defendant do not apply to the facts here. In each case cited by defendant, where the reviewing court addressed the issue, no competent waiver was found because the trial court failed to specifically indicate to the defendant that shared representation might result in inconsistent evidence or theories of defense which could adversely affect the outcome of the defendant's trial. Although the instant admonishment by the trial court is not labored, it is closer in kind to the inquiry made by the court in *People v. Robinson*. In *Robinson*, the purported conflict of interest arose by virtue of defendant being represented by a lawyer whose office earlier represented the prosecution witness. The trial court made extensive inquiry of defendant on many matters, but the pertinent substance of the inquiry involved informing the defendant of the potential for conflict and the consequences thereof. 79 Ill. 2d 147, 161-65.

■■ The instant record reveals the trial court informed defendant of the difficulties inherent in any multiple representation. The court then indicated inconsistent evidence could be harmful to co-defendants represented by one lawyer. Furthermore, the court stated it would be difficult under those conditions for one lawyer to fairly represent the interests of each co-defendant. Defendant indicated he had no objection to multiple representation. We believe that under the circumstances surrounding this case defendant made an intelligent and knowing waiver of his right to separate counsel. Although subsequent trial testimony resulted in admission of inculpatory evidence from Masorlian against defendant, that testimony was anticipated within the trial court's admonishment. Accordingly, although an actual conflict did manifest itself at trial, defendant's right to effective counsel was not violated.

## II

Defendant next contends the evidence at trial was insufficient to prove beyond a reasonable doubt that he possessed more than 30 grams of cocaine. Defendant relies upon the police department's forensic chemist's response to an assistant state's attorney's question regarding the weight of the cocaine during laboratory testing.

"Q: And do you recall what the total weight of the envelopes was?

A: I believe it was approximately 101.88 grams.

Q: And what if anything did you do after weighing the white powder?

A: I performed analysis on the individual packets of white powder."

Defendant argues that since the record suggests the chemist weighed the cocaine while it was in the envelopes, the weight of the envelopes may have accounted for more than 71.88 grams. Accordingly, defendant concludes the State failed to prove he was in possession of more than 30 grams.

■■ Evidence at trial indicates the cocaine was contained in five clear plastic bags. The trial court had before it the evidence of the individual containers. That court's observation of the bags in conjunction with the chemist's testimony gave the trial court sufficient evidence upon which to base its fact determination as to the weight of the controlled substance. The court found defendant guilty of possession of more than 30 grams. A reviewing court will not reverse a criminal conviction unless the evidence is so improbable as to raise a reasonable doubt of defendant's guilt. (*People v. Yarbrough* (1977), 67 Ill. 2d 222, 227, 367 N.E.2d 666; *People v. Stringer* (1972), 52 Ill. 2d 564, 568, 289 N.E.2d 631.) The instant evidence is not so improbable. Accordingly, defendant's conviction for possession of more than 30 grams of cocaine is affirmed.[3]

## III

Defendant's final contention is that his sentence is excessive in light of the record. Defendant essentially claims he should be sentenced to probation because the trial court found him guilty of possession of pentobarbital, the trial court indicated a desire to sentence defendant to the minimum term permissible, and conviction of possession of pentobarbital is a probational offense (Ill. Rev. Stat. 1979, ch. 38, par. 1005—5—3(b)(1)).

---

[3] Defendant has waived his challenge to the constitutionality of section 402(a)(2) of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1977, ch. 56½, par. 1402(a)(2)) for his failure to raise the issue until the reply brief. *People v. Pickett* (1973), 54 Ill. 2d 280, 282, 296 N.E.2d 856.

■■ The trial court found defendant guilty of possession of more than 30 grams of cocaine as well as possession of pentobarbital. According to the present status of the "single act, single offense" doctrine in Illinois, the simultaneous possession of more than one type of controlled substance constitutes but a single offense for which there can be only one conviction. (*People v. Manning* (1978), 71 Ill. 2d 132, 137, 374 N.E.2d 200; *People v. Evans* (1979), 80 Ill. App. 3d 87, 93, 398 N.E.2d 1219; but compare *People v. Myers* (1981), 85 Ill. 2d 281, 422 N.E.2d 620, and *People v. King* (1977), 66 Ill. 2d 551, 565, 363 N.E.2d 838, *cert. denied* (1977), 434 U.S. 894, 54 L. Ed. 2d 181, 98 S. Ct. 273 (closely related acts deemed separate offenses) with *People v. Schlenger* (1958), 13 Ill. 2d 63, 67, 147 N.E.2d 316, and *People v. Schultz* (1979), 73 Ill. App. 3d 379, 382-87, 392 N.E.2d 322 (closely related acts deemed single offense).) When convictions upon multiple offenses rest upon the same act or conduct, only that conviction and sentence for the most serious of the offenses may stand. (*People v. Williams* (1975), 60 Ill. 2d 1, 13, 322 N.E.2d 819.) Conviction for possession of more than 30 grams of cocaine is a Class 1 felony, whereas conviction for possession of pentobarbital constitutes a Class 3 felony. (Ill. Rev. Stat. 1977, ch. 56½, pars. 1402(a)(2), 1402(b).) Thus, possession of more than 30 grams of cocaine amounts to the more serious offense. Accordingly, the conviction for possession of pentobarbital cannot stand and must be vacated. Defendant's sentence of 4 years is proper under the circumstances and cannot be reduced to a sentence of probation. Ill. Rev. Stat. 1979, ch. 38, pars. 1005—8—1(a)(4), 1005—5—3(c)(2)(D).

For the foregoing reasons defendant's conviction for possession of more than 30 grams of cocaine is affirmed, but his conviction for possession of pentobarbital is vacated. Defendant's sentence is affirmed.

Affirmed in part; vacated in part.

STAMOS and PERLIN, JJ., concur.