UNITED STATES of America, ex rel.
Ronald TONALDI, Petitioner,

v.

Richard J. ELROD, Sheriff of Cook County and Tyrone C. Fahner, Attorney General of Illinois, Respondents.

No. 82 C 0260.

United States District Court,
N. D. Illinois, E. D.

June 18, 1982.

See also D.C. 537 F.Supp. 1229.

Julius L. Echeles, Chicago, Ill., for petitioner.

Elizabeth Cohen, Asst. States Atty., Chicago, Ill., for respondents.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

On January 18, 1982, Ronald Tonaldi ("Tonaldi") filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, seeking review in this Court of his state conviction for possession of more than 30 grams of cocaine. The conviction was affirmed by the Appellate Court of Illinois in *People v. Tonaldi*, 98 Ill.App.3d 528, 54 Ill. Dec. 297, 424 N.E.2d 1200 (1st Dist. 1981), and the Illinois Supreme Court has denied leave to appeal.[1] Presently before the Court are the parties' cross-motions for summary judgment on Tonaldi's underlying claim that he was denied the effective assistance of counsel when his lawyer jointly represented several co-defendants at trial.[2] The Court has held an evidentiary hearing to determine whether Tonaldi's purported waiver of his right to a separate attorney was knowing, intelligent and voluntary. Having carefully considered the evidence adduced at that hearing and the evidence contained in the record, the Court will grant Tonaldi's motion for summary judgment and deny respondents' motion.

The parties do not dispute that the trial testimony of one of petitioner's co-defendants, Carol Masorlian ("Masorlian"), also represented by Tonaldi's attorney, was in conflict with Tonaldi's defense. Specifically, Masorlian testified that she saw a bag, later discovered to contain cocaine, on the floor of Tonaldi's car when he picked her up at her home on April 12, 1979. This testimony, exculpatory as to Masorlian but inculpatory as to Tonaldi, was relied upon by the trial judge when he found Tonaldi guilty of constructively possessing the cocaine discovered in the bag.[3] In light of this inculpatory testimony from his co-defendant, Tonaldi now claims that his lawyer's joint representation of Miss Masorlian and himself violated his sixth amendment right to effective assistance of counsel.

Respondent argues that Tonaldi waived his right to separate counsel when the trial court warned him of his lawyer's potential conflict of interest prior to trial.[4] The Illi-

---

1. Tonaldi has exhausted all available state remedies on the legal claims raised in his petition for a writ of habeas corpus. 28 U.S.C. § 2254(b).

2. Tonaldi's original petition also asserted that the evidence presented at trial was insufficient to support a finding that he possessed more than 30 grams of cocaine. This Court granted respondents' motion for summary judgment on that claim on May 5, 1982. 537 F.Supp. 1229.

3. The trial judge stated that "[t]here is no question that Mr. Tonaldi, so far as the evidence shows, was alone in the car when Miss Masor-

lian entered the car. She said the bag, at that time, was in the car." Trial Transcript, p. 286.

4. The trial court's warning to petitioner consisted of the following:

   [THE COURT]: Mr. Tonaldi, the State is genuinely concerned because it would be unfair to you and your co-defendants that there might be some conflict between the three of you that would make it improper for you to have one lawyer.

   In other words, your attorney has to be concerned with your interest exclusively, and it would be very difficult for your attorney if he represents two defendants where the de-

nois Appellate Court, upon review of the transcript of that admonishment, concluded that Tonaldi's acquiescence in the joint representation constituted a knowing, intelligent and voluntary waiver of his right to separate counsel. *Tonaldi, supra*, 98 Ill. App.3d at 531, 54 Ill.Dec. 297, 424 N.E.2d 1200. Tonaldi's petition for a writ of habeas corpus in this Court alleges that the state Appellate Court's conclusion is unsupported by the record.

■ As a general matter, factual determinations made by state trial and appellate courts enjoy a "presumption of correctness" in the context of a federal petition for a writ of habeas corpus. 28 U.S.C. § 2254(d) (1976). *Sumner v. Mata*, 449 U.S. 539, 550, 101 S.Ct. 764, 771, 66 L.Ed.2d 722 (1981). That presumption does not, however, attach to state court determinations involving mixed questions of fact and law or to determinations of law as applied to facts found by the state court. *Cuyler v. Sullivan*, 446 U.S. 335, 341–42, 100 S.Ct. 1708, 1714–15, 64 L.Ed.2d 333 (1980); *Townsend v. Sain*, 372 U.S. 293, 309 n.6, 83 S.Ct. 745, 755 n.6, 9 L.Ed.2d 770 (1963); *United States ex rel. Veal v. Wolff*, 529 F.Supp. 713, 723–24 (N.D.Ill.1981). The Appellate Court's conclusion in this case regarding the knowing and intelligent character of Tonaldi's acquiescence in his counsel's joint representation falls within this latter category. That conclusion is not the kind of "basic, primary or historical" fact due a presumption of correctness in this context.

*Cuyler, supra*, 446 U.S. at 342, 100 S.Ct. at 1714. Accordingly, pursuant to our earlier opinion on Tonaldi's petition, this Court conducted an evidentiary hearing[5] to determine whether petitioner's response to the trial court's admonishment constituted a knowing and intelligent waiver of his right to separate counsel.

Tonaldi testified at the hearing that, despite the trial court's warning, he acquiesced in the joint representation in reliance on his attorney's advice.[6] Tonaldi also testified that, at the time he was admonished by the trial court, he "couldn't imagine" any harmful testimony coming from his co-defendants and that he did not understand how any conflicting testimony from those defendants would impair his lawyer's effectiveness.

■ As discussed more fully in our prior opinion, the sixth amendment right to effective assistance of counsel necessarily encompasses the right to representation by an attorney who does not owe conflicting duties to other defendants. *Holloway v. Arkansas*, 435 U.S. 475, 484, 98 S.Ct. 1173, 1178, 55 L.Ed.2d 426 (1978). To be effective, the waiver of that right must be knowing and intelligent. *Id.* at 483 n.5, 98 S.Ct. at 1178 n.5; *Glasser v. United States*, 315 U.S. 60, 70, 62 S.Ct. 457, 465, 86 L.Ed. 680 (1942). The fundamental importance of a defendant's sixth amendment rights dictates that the Court indulge in all reasonable presumptions against a waiver of those

fense might be inconsistent and I don't know whether anybody is going to testify here, because you don't have to testify, but if some defendant or all defendants should testify and say something that was harmful to the other defendant, that would be a conflict in the testimony probably, and it would be difficult for one lawyer to fairly represent all defendants when that occurs.

Now, Mr. Tonaldi knowing that—

Is there anything else you think I should say, Mr. State's Attorney?

[STATE'S ATTORNEY]: No, your Honor.

THE COURT: Knowing that do you have any objection to [the defense attorney] representing you and the other two defendants at the same time?

DEFENDANT TONALDI: No, sir.

Trial Transcript, pp. 12–13.

5. The parties are in agreement that there are no additional evidentiary matters that either side could present at any subsequent hearing on the merits of the petition.

6. At the very least, the record reflects that counsel advised Tonaldi not to object to the joint representation. Trial counsel's unnotarized affidavit and the statements of Tonaldi's co-defendants (submitted in support of petitioner's motion for reconsideration of this Court's denial of bond) further suggest that Tonaldi's attorney advised him that he could "handle" any joint representation problem. Tonaldi's counsel indicated on the record on at least four occasions that he saw no conflict between co-defendants. Trial Transcript, pp. 5, 6, 7, 10.

rights. *United States v. Davis*, 604 F.2d 474, 482 (7th Cir. 1979); *Day v. United States*, 357 F.2d 907, 909 (7th Cir. 1966). Accordingly, Tonaldi's inability to appreciate the consequences of his attorney's joint representation, if true, vitiates the constitutional effectiveness of his purported waiver of the right to separate counsel. *Tonaldi, supra*, 537 F.Supp. at 1232. *See Brady v. United States*, 397 U.S. 742, 748, 90 S.Ct. 1463, 1468, 25 L.Ed.2d 747 (1970).

Respondents attempt to demonstrate on two levels that Tonaldi understood the nature and significance of the right to separate counsel he purportedly waived before the trial judge. First, they point out that Tonaldi was present at the preliminary hearing during which his co-defendant Masorlian testified to the same effect as she testified at trial.[7] Respondents argue, therefore, that Tonaldi had notice of the existence of a conflict between co-defendants before he was asked to waive his right to separate counsel. According to this theory, Tonaldi should have had an independent basis from which to evaluate the worth of

■ Respondents' thesis does not establish the knowing and intelligent nature of Tonaldi's purported waiver. That Masorlian testified at the preliminary hearing to the same effect as she testified at trial did not put Tonaldi on notice of the incriminating implication attributed to that testimony by the trial judge. On its face, Masorlian's former testimony does not appear to incriminate Tonaldi. Even Tonaldi's counsel, who participated in the preliminary hearing, failed to perceive the existence of a conflict of interest between co-defendants as the result of Masorlian's testimony.[8] We can hardly hold that Tonaldi understood the legal implications of Masorlian's former testimony when the record makes clear that his own attorney failed to appreciate those implications. Moreover, even if petitioner recognized a conflict between Masorlian's former testimony and his own defense, there is no evidence to rebut Tonaldi's testimony that, at the time of trial, he failed to understand how such conflicting testimony would impair his lawyer's effectiveness.[9]

his counsel's advice and the significance of the trial court's admonishment.

---

**7.** Tonaldi testified in the hearing before this Court that he did not remember the substance of Masorlian's preliminary hearing testimony. The preliminary hearing took place five months before trial. There is no dispute, however, that Tonaldi was present at the hearing. Masorlian testified at the preliminary hearing as follows:

> [STATE'S ATTORNEY]: Q. The vinyl bag, the blue vinyl bag that has been referred to today I believe in your testimony and the other two defendants, that bag belonged to Mr. Tonaldi, is that correct?
>
> [DEFENDANT MASORLIAN]: A. That I really don't know.
>
> Q. Did it belong to you?
> A. No, it didn't.
> Q. Do you know if it belonged to [the other co-defendant]?
> A. I don't think so.
> Q. When was the first time you saw that bag in that car?
> A. Just as we were driving I seen it. It was in between a garbage bag and a seat.
> Q. So that item was in the car when you got into the car?
> A. Yes.

Preliminary Hearing Testimony, pp. 33–34. The possibility that this preliminary hearing testimony might give rise to a conflict of interest between co-defendants was discussed in general terms in a colloquy between the attor-

neys and the trial judge just prior to the court's admonition to Tonaldi. In the course of that colloquy, the state's attorney indicated that the testimony of the co-defendants at the preliminary hearing differed "with respect to the knowledge of the contraband, how it got there in the car...." Trial Transcript, p. 7.

**8.** Even after having been made aware of the implications of Masorlian's testimony in general terms, Tonaldi's counsel represented to the court that he saw no conflict of interest. He characterized the state's attorney's concern as a "guess interpretation of the preliminary hearing." Trial Transcript, p. 10.

**9.** The reasonableness of Tonaldi's reliance on his attorney's advice is reinforced by the colloquy, overheard by the petitioner, between the trial judge and the attorneys prior to the court's admonition. In the course of those discussions, the trial judge remarked: "I'm aware of the fact that if there is a conflict the defendants are entitled to separate counsel, and it's up to them to—*it's really up to their attorney* to be able to determine whether or not there's some conflict." Trial Transcript, pp. 7–8 (emphasis added). This remark could easily have been misinterpreted as a judicial endorsement of his counsel's judgment on the conflict issue.

■ Respondents also attempt to establish the knowing and intelligent nature of Tonaldi's purported waiver by offering general evidence of his level of competence in business affairs and his experience in the criminal justice system. Tonaldi owns two commercial properties in the Chicago area and a private residence in Wainesville, Illinois. He has obtained loans totalling over $150,000 for the acquisition, maintenance and rehabilitation of these properties. Tonaldi's criminal record reflects that he pleaded guilty to a charge of criminal trespass to a vehicle in 1963 and was sentenced to one year probation.[10]

Taken together, these facts do not establish that Tonaldi knowingly and intelligently waived his right to separate counsel. As indicated in our prior opinion, the rights endangered by an attorney's joint representation of criminal defendants are subtle, yet fundamental. A defendant's relative success in business affairs or his non-trial exposure to the criminal justice system almost two decades ago does not evidence his ability to appreciate the special problems raised by joint representation.

■ Tonaldi's general level of competence and exposure to some of the harsh realities of life might well have been sufficient to establish a knowing and intelligent waiver if the petitioner had been warned, either by his own attorney or the trial court, of the specific nature of the conflict and the implications of that conflict on his attorney's effectiveness. This record, however, does not reflect such a warning. Although the trial court attempted to explain to Tonaldi the danger of joint representation, this explanation was constitutionally defective because the court itself was not in a position to know the specific dangers and could not reasonably predict them so as to intelligently advise the petitioner.[11] *Cf. United States v. Agosto*, 528 F.Supp. 1300, 1306–10 (D.Minn.1981). *United States v. Garafola*, 428 F.Supp. 620, 623–24 (D.N.J. 1977), *aff'd sub nom, United States v. Dolan*, 570 F.2d 1177 (3d Cir. 1978). The abstract and hypothetical admonishment delivered to Tonaldi in this case was simply insufficient to inform him of the fundamental nature of the right he was purporting to waive.

The problem raised by the circumstances of this case would be obviated if courts actively discouraged the joint representation of criminal defendants in all but the most exceptional cases. The ethical and constitutional implications of joint representation dictate that trial courts strictly scrutinize any case where multiple defendants express a willingness to be defended by the same attorney.[12] As discussed in our prior opinion, it may very well be the better procedure for a court to err on the side of

As we explained in our earlier opinion, a defendant's reliance on his counsel's advice generally is viable as a defense only in joint representation cases and then only in the absence of a detailed inquiry from the trial judge or an affirmative manifestation of understanding from the defendant.

10. Tonaldi's record also reflects that he was arrested on various charges and released on four other occasions between 1960 and 1967. Other than the conviction at issue in this case, Tonaldi has not been convicted of any offense since 1963.

11. The trial judge himself identified the problem when he observed, prior to admonishing Tonaldi, that "I can't tell them that there may be a possible conflict without knowing what it is. In other words, they don't know what they're waiving." Trial Transcript, p. 9.

12. We are cognizant of the Supreme Court's observation that state courts are not constitutionally obligated to initiate inquiries into the propriety of multiple representation in every case. *Cuyler, supra*, 446 U.S. at 346–47, 100 S.Ct. at 1717. In the present case, however, such an inquiry was clearly necessary. The trial court could not have presumed Tonaldi knowingly waived his right to separate counsel; it was clear from the record that Tonaldi's counsel did not perceive such a conflict and could not have informed him of the implications of his waiver. Alternatively, the trial court could not have presumed that no conflict existed; petitioner's co-defendant had already testified in a manner which could have been deemed inculpatory as to Tonaldi.

precluding joint representation rather than be vulnerable on review to the kind of contentions raised by petitioner in this case. This is particularly true in a case such as this where the judge, prior to trial, is not in a position to independently evaluate the likelihood or significance of a conflict of interest arising between co-defendants during trial.

As the Supreme Court made clear in *Glasser, supra,* "[t]he right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial." 315 U.S. at 76, 62 S.Ct. at 467. "[U]nconstitutional multiple representation is never harmless error." *Cuyler, supra,* 446 U.S. at 349–50, 100 S.Ct. at 1719. For purposes of this petition, therefore, our inquiry ends upon finding that Tonaldi was denied his right to effective assistance of counsel. Accordingly, petitioner's motion for summary judgment is granted and respondents' motion is denied. It is so ordered.