UNITED STATES of America, ex rel. Ronald TONALDI, Petitioner-Appellee,

v.

Richard J. ELROD and Tyrone C. Fahner, Respondents-Appellants.

No. 82–2063.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 8, 1983.

Decided Aug. 19, 1983.

Rehearing Denied Sept. 14, 1983.

See also 537 F.Supp. 1229.

Julius Lucius Echeles, Chicago, Ill., for petitioner-appellee.

Kenneth A. Fedinets, Chicago, Ill., for respondents-appellants.

Before CUMMINGS, Chief Judge, WOOD and ESCHBACH, Circuit Judges.

ESCHBACH, Circuit Judge.

The question in this case is whether the petitioner knowingly and intelligently waived his Sixth Amendment right to counsel free from a conflict of interest. The district court answered the question in the negative and ordered the petitioner released from custody. Noting jurisdiction under 28 U.S.C. § 2253, we reverse.

I.

In 1979, the petitioner's car was stopped for proceeding through a red light. A police officer approached the car, which contained the petitioner and two passengers, and viewed a dark-colored vinyl bag on the front seat. The officer also saw a clear-plastic bag of white powder protruding from the dark bag. After the powder was analyzed, all three persons in the car were indicted for the unlawful possession of cocaine.

The petitioner and his two co-defendants all retained the same counsel. Given the nature of the case and certain evidence introduced at the preliminary hearing, the assistant State's attorney doubted whether one attorney could adequately represent all three defendants. Before the trial began, therefore, the assistant State's attorney initiated a colloquy with the court, the defense attorney, and the defendants. The relevant portions of that exchange are:

> [ASSISTANT STATE'S ATTORNEY]: Your Honor, in ... the Preliminary Hearing we feel that the testimony of the passengers is different from the driver's, and because of that—
>
> THE COURT: Different in what sense, so [the defense attorney] will know what we're talking about.
>
> [ASSISTANT STATE'S ATTORNEY]: Well, your Honor, with respect to the knowledge of contraband, how it got there in the car, and we feel that to protect the record they should be made aware that there's, what the State feels is a possible conflict for their own interests, and if they want to waive having separate attorneys we feel it's required to protect the record.
>
> \* \* \* \* \* \*
>
> THE COURT: Well, I'm aware of the fact that if there is a conflict the defendants are entitled to separate counsel, and it's up to them to—it's really up to their

attorney to be able to determine whether or not there's some conflict. I really don't know.

\* \* \* \* \* \*

You see, I can't tell them that there may be a possible conflict without knowing what it is. In other words, they don't know what they're waiving.

[ASSISTANT STATE'S ATTORNEY]: Your Honor, that their testimony in some ways might conflict one another and might bring harm to their interest.

THE COURT: Well, that would be to their disadvantage, no doubt about that.

\* \* \* \* \* \*

THE COURT: It certainly is a serious problem when defendants are represented by a single lawyer who is torn between his obligation to those defendants by evidence that might—coming from one defendant that might harm the other's position here .... Well, do you have any objection if I make inquiry of your clients?

[DEFENSE ATTORNEY]: No.

\* \* \* \* \* \*

THE COURT: Mr. Tonaldi [the petitioner] —and I speak to you first because the procedure followed in all cases, whether criminal or civil, whoever is named first in the pleading he goes first, so that is why I speak to you first. And it's not that I regard you as any less important or more important than any other of the defendants.

Mr. Tonaldi, the State is genuinely concerned because it would be unfair to you and your co-defendants that there might be some conflict between the three of you that would make it improper for you to have one lawyer.

In other words, your attorney has to be concerned with your interest exclusively, and it would be very difficult for your attorney if he represents two defendants where the defense might be inconsistent and I don't know whether anybody is going to testify here, because you don't have to testify, but if some defendants or all defendants should testify and say

something that was harmful to the other defendant that would be a conflict in the testimony probably, and it would be difficult for one lawyer to fairly represent all defendants when that occurs.

\* \* \* \* \* \*

Knowing that do you have any objection to Mr. Solomon [the defense attorney] representing you and the other two defendants at the same time?

DEFENDANT TONALDI: No sir.

At trial, the difficult situation that the court discussed did transpire. One of the petitioner's co-defendants testified that she first saw the dark vinyl bag "on the floor of the front of the car" when the petitioner, then alone in the car, picked her up at her home. The trial judge, who sat as the trier-of-fact, credited this testimony and found only the petitioner guilty of possessing cocaine.

On appeal the petitioner contended that a conflict of interest rendered his attorney's assistance constitutionally defective. The conflict of interest manifested itself, according to the petitioner, when the defense attorney called the petitioner's co-defendant to the stand and elicited testimony inculpating the petitioner. *See generally Cuyler v. Sullivan,* 446 U.S. 335, 348, 100 S.Ct. 1708, 1718, 64 L.Ed.2d 333 (1980) (a person who did not object to joint representation must establish that an actual conflict adversely affected his lawyer's performance). The State countered this argument by asserting that the petitioner knowingly and intelligently waived his right to counsel unhindered by a conflict of interest. *See generally Holloway v. Arkansas,* 435 U.S. 475, 483 n. 5, 98 S.Ct. 1173, 1178 n. 5, 55 L.Ed.2d 426 (1978) (right to counsel free from conflict of interest may be waived).

The Appellate Court of Illinois agreed with the petitioner that "an actual conflict did manifest itself at trial." *People v. Tonaldi,* 98 Ill.App.3d 528, 531, 54 Ill.Dec. 297, 300, 424 N.E.2d 1200, 1203 (1981). However, after reviewing the colloquy reprinted above, the court held "that under the circumstances surrounding this case defendant

made an intelligent and knowing waiver of his right to separate counsel." *See id.* Accordingly the petitioner's conviction was affirmed.

Unsatisfied with the disposition of his constitutional claim, the petitioner brought this action seeking a writ of habeas corpus. The petitioner claimed, as he did in the Appellate Court of Illinois, that he was denied his Sixth Amendment right to counsel untrammeled by a conflict of interest. Anticipating that the respondents would assert waiver as a defense, the petition stated that the trial court's "inquiry was couched in vague generalities and was insufficient to allow petitioner to make a knowing and intelligent waiver of his 6th amendment right to separate counsel."

The respondents did, in fact, move for summary judgment on the ground that the petitioner waived his right to an attorney unaffected by a conflict of interest. The district court denied the motion because it could not "conclude as a matter of law that the trial court's warnings and [the petitioner's] acquiescence constitute a valid waiver of the right to effective assistance of counsel." 537 F.Supp. 1229, 1231 (1982). The district court therefore held an evidentiary hearing where the petitioner testified that he relied on his attorney's advice in not seeking separate counsel. Moreover, the petitioner testified that he "really didn't understand" the state trial court's admonition and question concerning a possible conflict of interest.

The district court subsequently entered judgment in favor of the petitioner and ordered his release from custody. In his thoughtful Memorandum Opinion the district judge wrote:

> Although the trial court attempted to explain to [the petitioner] the danger of joint representation, this explanation was constitutionally defective because the court itself was not in a position to know the specific dangers and could not reasonably predict them so as to intelligently advise the petitioner .... The abstract and hypothetical admonishment delivered to [the petitioner] in this case was simply

insufficient to inform him of the fundamental nature of the right he was purporting to waive.

> ... [I]t may very well be the better procedure for a court to err on the side of precluding joint representation rather than be vulnerable on review to the kind of contentions raised by petitioner in this case.

541 F.Supp. 608, 612–13 (1982). Finding the state trial court's statements to be inadequate and discerning no other source of advice, the district judge concluded that the petitioner was not given sufficient information to render his waiver knowing and intelligent.

## II.

Although the respondents, in their motion for summary judgment, stated that the petitioner's Sixth Amendment claim was "raised, argued extensively, and disposed of in the state court system," they have changed their position and now contend that the petition should have been dismissed as unexhausted. A petition for a writ of habeas corpus must be dismissed as unexhausted, of course, if there exists a meaningful and presently available state court remedy. *See* 28 U.S.C. § 2254(b). The respondents contend that pursuant to the Illinois post-conviction statute, Ill.Rev.Stat. ch. 38, § 122–1, the petitioner may take his constitutional claim to a state court for a ruling on the merits.

As we have noted on several occasions, however, post-conviction relief is not available in Illinois with respect to claims made on direct appeal. *See Perry v. Fairman,* 702 F.2d 119, 121 (7th Cir.1983); *People v. James,* 46 Ill.2d 71, 263 N.E.2d 5 (1970). In this case the petitioner argued before the Appellate Court of Illinois that a conflict of interest unconstitutionally impaired his attorney's performance. In connection with this claim he further asserted that the state trial court's statements were insufficient to permit a knowing and intelligent waiver. The appellate court rejected the argument by holding that the petitioner did make "an intelligent and knowing waiv-

er of his right to separate counsel." 98 Ill.App.3d 528, 531, 54 Ill.Dec. 297, 300, 424 N.E.2d 1200, 1203 (1981). It would thus appear uncontradictable that the petitioner's Sixth Amendment claim, and the related waiver issue, have been conclusively decided by the Appellate Court of Illinois so that an Illinois trial court is not now free to reconsider these matters.

■ The respondents, nevertheless, do contradict this conclusion and maintain that the petition for a writ of habeas corpus was based on "new facts," which were outside of the trial court record and were not before the Appellate Court of Illinois. Citing *People v. Thomas,* 38 Ill.2d 321, 231 N.E.2d 436 (1967), the respondents declare that in light of these new factual allegations, res judicata would not bar reconsideration of the petitioner's Sixth Amendment claim.

We question whether an Illinois court would relax the res judicata doctrine and reconsider the petitioner's constitutional claim on the merits. *See, e.g., People v. Edwards,* 83 Ill.App.3d 128, 131, 38 Ill.Dec. 540, 403 N.E.2d 771, 774 (1980). On direct appeal the appellate court might have ruled that *on the record before the court,* there was no indication that the petitioner's waiver of his right to separate counsel was unknowing. The court did not so rule, but rather held that the petitioner, as a matter of law and fact, made an intelligent and knowing waiver. Because the Appellate Court of Illinois did not refrain from ruling on the waiver issue and did not characterize its ruling as constrained by the limited record on appeal, it appears unlikely that an Illinois trial court would reconsider the holding that the petitioner validly waived his right to an attorney unimpaired by a conflict.

In any event, we need not direct a petitioner to pursue state remedies if the pursuit would be futile in the sense that we know that the state court would reject the claim. *See Zelenka v. Israel,* 699 F.2d 421, 423 (7th Cir.1983). In this case such a pursuit would be futile because the "new facts" regarding waiver that the respondents cite, would be considered irrelevant by an Illinois court; therefore the appellate court decision finding a valid waiver would control.

The first "new fact" raised in the federal proceedings is that the petitioner purportedly did not understand the concept of conflict of interest as it related to his case. This assertion, however, is a legal conclusion masquerading as a factual allegation. In saying that he did not understand the problems of joint representation, the petitioner is essentially asserting that the state trial court provided insufficient information and advice to permit the petitioner to make a knowing and intelligent waiver of his right to an attorney unaffected by a conflict of interest. But whether the state trial court adequately alerted the petitioner to the problems of joint representation is a legal issue—indeed the very issue on which the Appellate Court of Illinois and the federal district court disagreed.

■ The second and related "new fact" is that the petitioner relied on the advice of his attorney in choosing not to retain separate counsel. However, in deciding whether a waiver is knowing and intelligent, a court is concerned not with why the person made a certain choice, but with whether the trial judge (or someone else) provided sufficient information or advice to permit a choice between meaningful options. *See, e.g., United States v. Davis,* 604 F.2d 474, 482 (7th Cir.1979); *Day v. United States,* 357 F.2d 907, 910 (7th Cir.1966); *see generally Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969) (a court must affirmatively ensure that a defendant understands the connotations and consequences of a guilty plea). A person is capable, without the advice of counsel, to make an intelligent decision to waive a constitutional right,[1] *see Adams v. United States ex rel. McCann,* 317 U.S. 269, 277, 63 S.Ct. 236, 241, 87 L.Ed. 268 (1942); it would thus be anomalous to conclude that once advice is

---

1. There is no suggestion that the petitioner does not enjoy the mental capability to make    an intelligent choice.

given the person's choice becomes unintelligent or unknowing. The Appellate Court of Illinois held, on the basis of the state trial court's statements and inquiry, that the petitioner validly waived his right to an attorney free from a conflict; we are convinced that the fact that the petitioner relied on his attorney's advice would in no way affect this state-court determination.

The respondents might agree with us to this point. An exhaustion-type problem only appeared after the federal district court disagreed with the Appellate Court of Illinois on a point of law. The district court held that the state trial court's warnings and inquiry were insufficient, by themselves, to establish a valid waiver. After reaching this conclusion the district court did not immediately issue the writ; rather the court properly held an evidentiary hearing to resolve whether, in light of other circumstances, the petitioner's waiver was knowing and intelligent. *See Zuck v. Alabama,* 588 F.2d 436, 440 (5th Cir.), *cert. denied,* 444 U.S. 833, 100 S.Ct. 63, 62 L.Ed.2d 42 (1979); *Maynard v. Meachum,* 545 F.2d 273, 278 (1st Cir.1976). One could say, as the petitioner's counsel did at oral argument, that the hearing was held to benefit the respondents—the hearing gave the respondents an opportunity to prove that the writ should not issue. Nevertheless, because the testimony elicited from the petitioner at the hearing is evidence never heard by a state tribunal, the respondents assert that the petitioner's claim is unexhausted.

We believe that the respondents' view of the exhaustion doctrine is inconsistent with the habeas corpus statute, 28 U.S.C. § 2254, and is not compelled by the interests of comity. The habeas corpus statute clearly contemplates that a federal court may hear and consider evidence concerning factual matters not resolved by a state court. *See* 28 U.S.C. § 2254(d); Rule 8 of Rules Governing § 2254 cases. In this case the state-court system perceived no need to consider

evidence beyond the original trial court record. The federal district court disagreed and thus other matters, all of the facts surrounding the waiver, became relevant to the district court's resolution of the case. Once a disagreement over a precursory issue arose, however, the district court was not required to dismiss the case as unexhausted. The Appellate Court of Illinois decided, in effect, that further evidence is not needed to resolve the petitioner's claim, and comity would not be served by attempting to induce a state court to hold a hearing that it deems unnecessary.

Before we end our discussion of the exhaustion question, it is important to distinguish between two Sixth Amendment claims—one that was raised in the petition and one that was not. The petitioner asserts that a conflict of interest adversely affected his attorney's performance. He did not claim in his petition for a writ of habeas corpus that his attorney's decision to represent co-defendants was inconsistent with the minimum standards of competent representation,[2] *see, e.g., United States ex rel. McClindon v. Warden, Illinois State Penitentiary,* 575 F.2d 108, 114 (7th Cir.), *cert. denied,* 439 U.S. 856, 99 S.Ct. 170, 58 L.Ed.2d 163 (1978). The two Sixth Amendment claims are not coextensive because it is possible for an attorney to risk a possible conflict of interest and competently choose to represent co-defendants. Justice Frankfurter noted that there may be advantages to joint representation; for instance, "[a] common defense often gives strength against a common attack." *See Glasser v. United States,* 315 U.S. 60, 92, 62 S.Ct. 457, 475, 86 L.Ed. 680 (dissenting). Moreover, the ABA Code of Professional Responsibility recognizes that a lawyer with a conflict of interest may be able to represent his clients adequately. *See* DR 5–105(C). Whether the petitioner's attorney acted incompetently in deciding to represent the petitioner and his co-defendants is an issue not raised in the Appellate Court of Illinois and a claim involving facts outside of the

---

**2.** Although the petitioner, in his brief in opposition to the respondent's motion for summary judgment, hinted that counsel acted incompetently in deciding to represent co-defendants, that claim was not raised in the petition and was not disposed of by the district court.

trial court record. This possible claim is therefore unexhausted, *see Perry v. Fairman,* 702 F.2d 119, 122 (7th Cir.1983), and we express no opinion on its merits.

## III.

We now reach the merits and decide whether the state trial court's statements and inquiry were sufficient to permit the petitioner, a man who is able to understand the ordinary meaning of words,[3] to execute a knowing and intelligent waiver of his Sixth Amendment right to counsel free from a conflict of interest. Whether the petitioner effectively waived this constitutional right is not, of course, a question of fact, but an issue of federal law. *See Brewer v. Williams,* 430 U.S. 387, 397 n. 4, 97 S.Ct. 1232, 1238 n. 4, 51 L.Ed.2d 424 (1977). Perhaps it is more exact to state that it is a mixed question of law and fact; we apply federal legal principles to historical facts found in the state court record. *See Nash v. Israel,* 707 F.2d 298, 301 (7th Cir.1983). In any event, because we must apply federal law to a fixed state court record, we are not bound by the Appellate Court of Illinois's ruling, *see Sumner v. Mata,* 455 U.S. 591, 102 S.Ct. 1303, 1306, 71 L.Ed.2d 480 (1982), nor by the federal district court's ruling, *see United States v. Curcio,* 694 F.2d 14, 22 (2d Cir.1982).

■ As abstract as a trial judge's warnings about joint representation may be, so is the Supreme Court's description of a knowing and intelligent waiver. The Court has stated that a waiver is effective if the record demonstrates that the person "knows what he is doing and his choice is made with eyes open." *Faretta v. California,* 422 U.S. 806, 835, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562 (1975) (quoting *Adams v. United States,* 317 U.S. 269, 279, 63 S.Ct. 236, 241, 87 L.Ed. 268 (1942)). In this case it is our judgment that the state trial court's statements, warnings, and question were sufficient to enable the petitioner, "with eyes open," to proceed to trial with an attorney who might be hindered by a conflict of interest.

The state trial judge did more than state that there may be a conflict of interest in this case. The phrase "conflict of interest" might very well be meaningless to a layman. If a judge only referred to a possible conflict of interest, a criminal defendant might believe that the reference was to a conflict between co-defendants or between the defendant and his attorney. In reality, the conflict is within the attorney's loyalty; the problem is that the attorney might not be able to represent one client fully without damaging the interests of the other client. The state trial judge in this case, in fact, did not just utter the phrase "conflict of interest," but explained the potential problem in terms of the attorney's ability to represent all defendants fairly and completely. (See, e.g., "your attorney has to be concerned with your interest exclusively, and it would be very difficult for your attorney if he represents two defendants where the defense might be inconsistent.") The petitioner was therefore aware, if he chose to listen to the judge, that his representation might be adversely affected if he and his co-defendants went to trial with the same attorney.

Moreover, the state trial judge explained the potential problem by giving a particular example of an event that could adversely affect the attorney's performance. The judge told the petitioner that "if some defendants or all defendants should testify and say something that was harmful to the other defendant that would be a conflict in the testimony probably, and it would be difficult for one lawyer to fairly represent all defendants when that occurs." The petitioner was in a position to further particularize this example because at the preliminary hearing he heard his co-defendant testify that the dark-colored vinyl bag did not belong to her and that the bag was in the petitioner's car when he picked her up. As it turns out, this very example of a possible

---

**3.** The petitioner is a high-school graduate and for the past six years has been in the building-management business.

conflict of interest—one co-defendant's testimony implicating another—did transpire at trial and forms the basis of the petitioner's present complaint that a conflict adversely impaired his counsel's performance.

The case law clearly supports our conclusion that the petitioner knowingly and intelligently waived his right to representation unaffected by a conflict. In *United States v. Cox,* 580 F.2d 317 (8th Cir.1978), *cert. denied,* 439 U.S. 1075, 99 S.Ct. 851, 59 L.Ed.2d 43 (1979), the court found an effective waiver where the trial court only asked the defendant "do you have any objection whatever to Mr. Burke representing you as well as Mr. Wise and Mr. Cox, even though there might be a potential conflict?" *Id.* at 320. Unlike the court in the instant case, the trial court in *Cox* did not explain that a "conflict" could adversely affect the attorney's performance and did not provide any examples of how a conflict could arise. An inquiry similar to that in *Cox* was also found sufficient to permit a valid waiver in *Kaplan v. Bombard,* 573 F.2d 708 (2d Cir. 1978). The court found a valid waiver even in light of the fact that Mr. Kaplan, the defendant, remained silent and never indicated that he had no objection to joint representation. *See id.* at 711. Furthermore, a general description of the hazards of joint representation was found adequate to permit a valid waiver in *United States v. Waldman,* 579 F.2d 649 (1st Cir.1978), even though the court did not advise the defendant of any "specific dangers." *Id.* at 652; *accord Mapp v. Clement,* 451 F.Supp. 505, 510 (S.D.N.Y.1978). We have not overlooked our decision in *United States v. Gaines,* 529 F.2d 1038 (7th Cir.1976), where we held that a general explanation of the dangers of joint representation did not render the defendant's waiver knowing and intelligent. *Gaines* is distinguishable because in the present case the trial judge gave more than an abstract warning; he explained that the attorney's performance could be affected if one defendant's testimony inculpated a co-defendant. Also in *Gaines,* unlike the instant case, the defendant's attorney withdrew after the trial court issued its warning, and although the

new trial attorney also was hindered by a conflict, "Gaines could well have believed that the conflict problem no longer existed." *Id.* at 1044.

The able district judge stated that the petitioner's waiver would have been effective if the state trial court had warned the petitioner "of the specific nature of the conflict and the implications of that conflict on his attorney's effectiveness." 541 F.Supp. at 612. As we noted, however, the state judge did warn of the problem of one defendant's testimony implicating a co-defendant. If, in the district judge's view, this warning was not "specific," we must assume that a sufficiently specific warning would have been: "Your co-defendant is going to testify that the container of drugs was not hers, and that the container was in your car when you picked her up. Because your attorney also represents your co-defendant, your attorney will not vigorously examine your co-defendant to discredit this testimony." For several reasons, we believe that such a specific warning was not required to establish a valid waiver.

First, waivers of constitutional rights are, in general, effective without such specific knowledge of the implications of the waiver. For instance, a waiver of a jury trial is knowing and intelligent even though the defendant does not know how the trial judge will find. And a defendant's waiver of the right to remain silent after an arrest is effective even if the defendant is not told how his statements will be used against him at trial.

Second, it is usually difficult and sometimes impossible for a trial court to know how a conflict of interest will manifest itself at trial. A court is not free to inquire deeply into the attorney-client relationship nor is it free to elicit in advance the substance of a defendant's testimony. However, we reject the adoption of a per se rule that because a conflict may manifest itself in unforeseeable ways, no defendant may make a knowing and intelligent waiver of his right to an attorney unhindered by a conflict. *See United States v. Curcio,* 694 F.2d 14, 26 (2d Cir.1982); *United States v.*

*Agosto,* 675 F.2d 965, 976 (8th Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 77, 74 L.Ed.2d 74 (1982).

The district court was aware that a court may be unable to foresee how a conflict will appear, but the court believed that it would "be the better procedure to err on the side of precluding joint representation rather than be vulnerable on review to the kind of contentions raised by petitioner in this case." 541 F.Supp. at 612–13; *accord United States v. Garafola,* 428 F.Supp. 620, 624 (D.N.J.1977), *aff'd,* 570 F.2d 1177 (3d Cir. 1978). By disqualifying an attorney with a potential conflict of interest, the district court correctly observed a defendant would be prevented from claiming that a conflict adversely affected his lawyer's performance.

At the same time, however, the disqualification of a defendant's retained counsel is an invitation to make a different constitutional claim—the deprivation of "the right to counsel of one's choice." *United States v. Gaines,* 529 F.2d 1038, 1043 (7th Cir.1976). Indeed, one could say that the petitioner in this case did not *waive* his right to counsel unaffected by a conflict, so much as he *asserted* his right to select his own attorney. As Judge Friendly recently wrote, "the defendants' choice of joint representation, like that of self-representation, may sometimes seem woefully foolish to the judge. But ... the choice is mainly theirs; the judge ... is *not* to assume too paternalistic an attitude in protecting the defendant from himself." *United States v. Curcio,* 694 F.2d 14, 25 (2d Cir.1982) (emphasis in original). After considering the competing constitutional interests, therefore, we hold that disqualifying the petitioner's attorney was not the only option open to the state court; rather, after ensuring that the petitioner was proceeding with his eyes open, the state court properly allowed the trial to commence with the petitioner's chosen attorney. *Cf. Faretta v. California,* 422 U.S. 806, 834, 95 S.Ct. 2525, 2540, 45 L.Ed.2d 562 (1975) (to force a different lawyer on the petitioner may have convinced him that the law contrives against him); *but see United States v. Flanagan,* 679 F.2d 1072 (3d Cir.1982),

*cert. granted,* —— U.S. ——, 103 S.Ct. 721, 74 L.Ed.2d 948 (1983).

We hasten to add that we are not holding that the statements of the trial court in this case will always be sufficient to establish a valid waiver. We merely hold that in this case, where there is no hint that the petitioner is incompetent, where a preliminary hearing helped to focus the conflict of interest, and where the petitioner expressed no reservations, a knowing and intelligent waiver was effected. *See generally United States v. Donahue,* 560 F.2d 1039, 1042 (1st Cir.1977) (a deeper inquiry may be required if the defendant expresses any uncertainty or reservations).

It would always be good procedure to speak directly to a defendant and advise him of his right to retain separate counsel. While addressing the assistant State's attorney and while the petitioner was listening, the state trial court did state that "the defendants are entitled to separate counsel." Furthermore, because the petitioner knew how to hire an attorney, we may assume that he also knew how to fire one. *See United States v. Gaines,* 529 F.2d 1038, 1043 n. 3 (7th Cir.1976) (fact that counsel is retained is a factor to consider in deciding whether a waiver is knowing and intelligent). In the circumstances of this case, therefore, we believe that the petitioner was sufficiently aware of his right to separate counsel.

In closing we note that this case does not require us to exercise our supervisory powers over the district courts nor to interpret Rule of Criminal Procedure 44 concerning a federal judge's duty to "promptly inquire with respect to ... joint representation." We were asked to apply constitutional principles and decide whether the petitioner validly waived his right to an attorney without a conflict of interest. We have concluded that he did, yet we do not want to leave the impression that it is a defendant's primary duty to discern and avoid the problems of joint representation. On the contrary, as we have repeatedly stated, *attorneys* must always remain alert to avoid

**440**

unnecessary and unwise conflicts of interest.[4] *See United States v. Kidding,* 560 F.2d 1303, 1310 (7th Cir.), *cert denied,* 434 U.S. 872, 98 S.Ct. 217, 54 L.Ed.2d 151 (1977).

### IV.

For the reasons expressed in this opinion, the judgment of the district court is reversed.

---

**4.** The petitioner also contends that the district court erred in granting summary judgment to the respondents on the claim that there was insufficient evidence to convict. We will not consider this argument because the petitioner did not cross-appeal. *See* Fed.R.App.P. 4(a)(3).