THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* HORACE LEE HOLLIMAN, Defendant-Appellant.

(No. 72-331;

Second District—September 23, 1974.

William H. Snively, of Rockford, for appellant.

Philip G. Reinhard, State's Attorney, of Rockford (James W. Jerz and Edward N. Morris, both of Model District State's Attorneys Office, of counsel), for the People.

Mr. PRESIDING JUSTICE THOMAS J. MORAN delivered the opinion of the court:

In separate jury verdicts, defendant was found guilty of both the possession of and the sale of heroin in violation of section 3 of the Uniform Narcotic Drug Act (Ill. Rev. Stat. 1969, ch. 38, § 22—3). He was sentenced to a concurrent term of 2 to 6 years on each count. On appeal defendant contends that (1) the eavesdropping statute is unconstitutional; (2) the testimony of the law enforcement officers concerning his conversations with the informer were improperly admitted into evidence; (3) the testimony of the law enforcement officers was perjured; (4) he was not proven guilty beyond a reasonable doubt; and (5) the sentence is excessive.

On March 5, 1971, Jacob Seibert, Jr., while in jail charged with violating the Hypodermic Syringes and Needles Act (Ill. Rev. Stat. 1969, ch. 38, § 22—50 et seq.) and at his request, met with State Trooper Hendrickson and Winnebago County Detective England. As a result of the meeting, Seibert was released having agreed to work with the law enforcement officers as a paid informant.

On March 21, 1971, with permission from an assistant State's Attorney and with the consent of the informer, officers listened, via an extension phone, to a conversation between the informer and the defendant during which the defendant agreed to sell the informer a $25 bag of heroin. Both Hendrickson and the informer testified that the voice was that of the defendant.

The next day, again with the permission of an assistant State's Attorney and the consent of the informer, police outfitted the informer with an electronic eavesdropping device after first strip-searching him. He was given $25 in marked money and proceeded, in company with the officers, to the defendant's house. They traveled in an unmarked surveillance truck which contained the receiver for the electronic transmitter attached to the informer. At 3:30 P.M., the informer went to the front door of the defendant's house where defendant told him that he did not have any narcotios but would have some about 4 P.M. and that the informer should meet him then at a named cafe. Upon returning to the

truck, the informer was again strip-searched; no narcotics were found. The informer and police went to the cafe and waited one hour but defendant never arrived. After leaving the cafe, the informer was again strip-searched; no narcotics were found. They drove back to the defendant's house, the informer went to the rear door, defendant answered, and the informer gave him $25 in exchange for a foil-wrapped package. The officers overheard defendant tell the informer that he would have "smack" on a daily basis. The informer did not enter the house and was at all times within the officers' view. Upon returning to the vehicle and after giving the package to the police, he was again searched; no narcotics were found. A crime lab analysis revealed that within the foil package was 1/200th gram of substance containing heroin. Defendant was arrested on April 7, 1971. A search of his car and person revealed no further evidence. At trial, the informer and the law enforcement officers all testified regarding these events and conversations.

Defendant took the stand in his own behalf and testified that he was in Freeport, Illinois, on the date and during the time when the offense occurred. His testimony was corroborated by two other witnesses. He also offered testimony to the effect that he did not have a telephone on March 21, 1971, the date on which the informer was said to have called him. This testimony was corroborated by his sister and by an employee of the telephone company who testified that a phone, listed under the name of Breckenridge, was disconnected from defendant's home on January 26, 1971, and that a new connection, under the name of Graham, was not made at that address until May 14, 1971. No listing was found under defendant's name. On cross-examination, the telephone company employee testified that it was possible for another number to have been connected between these dates but that he could not run a check without having a specific name or number.

The eavesdropping statute provides in relevant part:

> "A person commits eavesdropping when he: (a) Uses an eavesdropping device to hear or record all or any part of any conversation unless he does so with the consent of any one party to such conversation and at the request of a State's Attorney; * * *."
> Ill. Rev. Stat. 1969, ch. 38, § 14—2.

Defendant contends that the statute violates the Fourth Amendment of the U.S. Constitution, section 6 of article II of the 1870 Illinois Constitution, and section 6 of article I of the 1970 Illinois Constitution. Section 6, article II, of the Illinois Constitution (1870) and the Fourth Amendment to the U.S. Constitution contain almost identical language, but section 6, article I, of the Illinois Constitution (1970), effective July 1, 1971, has extended the rights of the people to include the right "to

be secure in their persons, houses, papers and other possessions against unreasonable * * * invasions of privacy or interceptions of communications by eavesdropping devices or other means."

■■ In the instant case, the eavesdropping occurred prior to the effective date of the 1970 constitution, but the motion to suppress eavesdropping evidence (on the grounds that the statute was invalid under the new constitution) and the trial itself, both, occurred after the constitution's effective date. It is necessary to decide, then, whether the above-quoted provisions are applicable. The constitution's transition schedule provides that any new right, substantive or procedural, is prospective, not retroactive. (Ill. Const. (1970), trans. sched. § 2.) We find the problem analogous to that faced by the United States Supreme Court in determining the retroactive effect of a decision that expands new constitutional rules affecting criminal trials. The determination is viewed by the Court as requiring three considerations: (a) the purpose to be served by the new standards, (b) the extent to which law enforcement authorities relied on the old standards, and (c) the effect on the administration of justice by the retroactive application of new standards. (*Stovall v. Denno,* 388 U.S. 293, 297, 18 L.Ed.2d 1199, 1203, 87 S.Ct. 1967 (1967).) The most important factor is the purpose to be served by the new constitutional rule. (*Desist v. United States,* 394 U.S. 244, 249, 22 L.Ed.2d 248, 255, 89 S.Ct. 1030 (1969).) The purpose of the new section 6, article I, of the 1970 constitution is to more effectively protect the citizens of our state from both unreasonable interceptions of communications by eavesdropping devices or other means, and unreasonable invasions of privacy. We cannot say that the purpose would be advanced by making the rule retroactive to police action that occurred prior to the constitution's effective date and which was conducted in reliance upon a statute then in effect. Further, retroactive application would upset the administration of justice in a number of cases in the same class as that of defendant's. We therefore find that section 6 of article I of the 1970 Illinois Constitution, to whatever extent it may have created a new right, does not apply to events that occurred prior to its effective date, and any such right does not control our determination herein.

Both the Federal and State constitutions prevent unreasonable searches and provide that no search warrants are to issue without a showing of probable cause. Defendant claims that "to allow the prosecuting officer to decide whether a search should be conducted is unreasonable per se, and since no search warrant procedure is authorized by the statute, it is unconstitutional." We first examine whether the State's actions (in listening to the conversations between the defendant and the consenting in-

former) constituted a "search and seizure" within the meaning of the Fourth Amendment to the U.S. Constitution and section 6 of article II of the 1870 Illinois Constitution.

At common law, the ancient practice of eavesdropping was condemned as a nuisance. (4 Blackstone, Commentaries, 168.) Since the days of Lord Camden, intrusions into individual privacy have been condemned as "subversive of all the comforts of society." (*Entick v. Carrington*, 19 How. St. Tr. 1029, 1066 (1765).) Our founding fathers saw fit to recognize the right to privacy by the drafting of the Fourth Amendment. Unlike his ancient counterpart, the modern eavesdropper is no longer limited by proximity; sophisticated electronic devices now facilitate eavesdropping in almost any situation. The law, though jealous of individual privacy, has not kept pace with technological advances. (*Berger v. New York*, 388 U.S. 41, 47-48, 18 L.Ed.2d 1040, 1045-46, 87 S.Ct. 1873 (1967).) In Illinois, the eavesdropping statute was construed by the supreme court in *People v. Kurth*, 34 Ill.2d 387, 395 (1966), wherein it was held that a recording of a conversation obtained by eavesdropping was inadmissible against a party who had not consented to or had knowledge of the recording. The statute was amended in 1969 to allow eavesdropping subject to the request of a state's attorney and the consent of one party to the conversation. The defendant contends that this exception to the statutory prohibition is unconstitutional. We disagree.

In *Katz v. United States*, 389 U.S. 347, 351-52, 19 L.Ed.2d 576, 582, 88 S.Ct. 507 (1967), the court explained that "the Fourth Amendment protects people, not places. What a person knowingly exposes to the public, * * * is not a subject of Fourth Amendment protection. But what he seeks to preserve as private * * * may be constitutionally protected." Thereafter, in *United States v. White*, 401 U.S. 745, 749-52, 28 L.Ed.2d 453, 457-59, 91 S.Ct. 1122 (1971), the Court found that police eavesdropping on conversations between an accused and a consenting informant did not violate the fourth amendment. The Court reasoned that:

> "[H]owever strongly a defendant may trust an apparent colleague, his expectations in this respect are not protected by the Fourth Amendment when it turns out that the colleague is a government agent regularly communicating with the authorities. In these circumstances, 'no interest legitimately protected by the Fourth Amendment is involved,' for that amendment affords no protection to 'a wrongdoer's misplaced belief that a person to whom he voluntarily confides his wrongdoing will not reveal it.' *Hoffa v. United States*, at 302, 17 L Ed 2d at 382. No warrant to 'search and seize' is required in such circumstances, nor is it when

the Government sends to defendant's home a secret agent who conceals his identity and makes a purchase of narcotics from the accused, *Lewis v. United States*, 385 US 206, 17 L Ed 2d 312, 87 S Ct 424 (1966), or when the same agent unbeknown to the defendant, carries electronic equipment to record the defendant's words and the evidence so gathered is later offered in evidence. *Lopez v. United States*, 373 US 427, 10 L Ed 2d 462, 83 S Ct 1381 (1963).

* * * Our problem, in terms of the principles announced in *Katz*, is what expectations of privacy are constitutionally 'justifiable'—what expectations the Fourth Amendment will protect in the absence of a warrant. So far, the law permits the frustration of actual expectations of privacy by permitting authorities to use the testimony of those associates who for one reason or another have determined to turn to the police, as well as by authorizing the use of informants in the manner exemplified by *Hoffa* and *Lewis*. If the law gives no protection to the wrongdoer whose trusted accomplice is or becomes a police agent, neither should it protect him when that same agent has recorded or transmitted the conversations which are later offered in evidence to prove the State's case."

■■ Our supreme court has held that the Fourth Amendment to the U.S. Constitution and section 6 of article II of the 1870 Illinois Constitution should be construed alike. (*People v. Tillman*, 1 Ill.2d 525, 529 (1953).) Therefore, based on *White*, we hold that the defendant's constitutional right to privacy was not violated, there being no search and seizure here involved; that the statute is valid; and that the procedure provided by the statute may be initiated without a warrant or other court approval.

■■ Defendant next contends that the trial court erred by admitting the officers' testimony regarding conversations between defendant and the State's informant. He argues that such evidence was obtained in violation of the statute inasmuch as an assistant State's Attorney, not the State's Attorney, approved the eavesdropping. The legislature, in using the term "a State's Attorney," contemplated that an assistant State's Attorney could act in this regard. (*People v. Nahas*, 9 Ill.App.3d 570, 575-76 (1973).) Therefore, approval by the assistant State's Attorney satisfied the requirement of the statute and, coupled with the consent of the informer, fully complied with the conditions of exception to the eavesdropping statute. The testimony of the officers who overheard these conversations was, in this regard, admissible.

■■ The defendant further maintains that the testimony of the law-

enforcement officers was perjured and that the use of this testimony deprived the defendant of a fair trial. This claim of error was not raised in defendant's post-trial motion nor was the report of proceedings on defendant's post-trial motion included in the record. Due to the constitutional dimension of the allegation, however, we here consider the issue which is one of fact. (*People v. Bassett*, 56 Ill.2d 285, 293 (1974).) Defendant claims that the two officers gave testimony which varied from earlier testimony, reports and pictures. At trial, England testified that on the first visit to defendant's home the informer went to the front door: at an earlier hearing and in his police report, he stated that the informer went to the rear door. When questioned about this discrepancy, England testified that he had erred in his earlier testimony and report. Two officers testified at trial that they could see the defendant's rear door from the van: defendant offered pictures into evidence to show that the door was not visible from that location. A discrepancy also occurs between the testimony of the officers as to whether the informer was searched after his initial meeting with the defendant and as to whether he still had the marked money at that time. Hendrickson testified that the informer was searched after his initial meeting and that he still had the marked money. England did not testify about the search and said he was uncertain whether the informer still had the money although in his report he had stated that the defendant was searched after the initial meeting and found to have no money. The defendant also cites the discrepancy between the name of the defendant and the name of the "suspect" shown on the evidence tag attached to the package of heroin: the tag read Chester Holliman, not Horace Holliman. The evidence tag was the only place in which the suspect was referred to as "Chester." At trial and in the earlier reports of the two officers' and of the informer, it was uncontradicted that the man who made the delivery to the informer was Horace Holliman, the defendant in the case at bar.

■■ The question is whether these inconsistencies and discrepancies constituted "the prosecution's use or reliance on testimony known to be false." (*People v. Martin*, 56 Ill.2d 322, 325 (1974).) In this type of allegation the burden of proof is on the defendant (*People v. Harris*, 55 Ill.2d 15, 18 (1973)), and a conclusion that testimony was perjured cannot be drawn solely from the circumstance that a witness has given contradictory evidence. (*People v. Nuccio*, 54 Ill.2d 39, 50 (1973).) Under the facts here, we find no merit to defendant's claim that the officers' testimony was perjured.

■■ Defendant asserts that he was not proven guilty beyond a reasonable doubt in that the evidence against him was based on the testimony

of an addict-informer and should, therefore, not be believed. While the testimony of an addict-informer, standing alone, is viewed with suspicion and must be carefully scrutinized (*People v. Bazemore*, 25 Ill.2d 74, 76-77 (1962); *People v. Porter*, 13 Ill.App.3d 437, 439 (1973),) here the addict-informer's testimony was corroborated by close police surveillance and eavesdropping. Where the addict-informer's testimony is corroborated by close police surveillance, his testimony may be believed. (*People v. Hill*, 83 Ill.App.2d 116, 119-23 (1967).) We find that sufficient corroborating evidence was presented to support the credibility of the addict-informer and to sustain the convictions of the defendant for sale and possession of heroin beyond a reasonable doubt.

■■ Defendant additionally argues that he was not proven guilty beyond a reasonable doubt because testimony of the defense witnesses exonerated him. Ignoring the fact that one of his own witnesses contradicted him (defendant claimed he was in Freeport all day on March 22, 1971, but his father testified that he saw the defendant in Rockford on the afternoon of that same date), it remains that the jury was not obligated to believe the testimony of the defendant and his corroborating witnesses, for where there is clearly conflicting testimony, it is the province of the jury to weigh the evidence and decide whose testimony is credible. Unless the evidence is so palpably contrary to the verdict or so unreasonable, improbable or unsatisfactory as to cause a reasonable doubt as to defendant's guilt, a jury's verdict should stand. (*People v. Nuccio, supra*, at 51.) Under the facts here, the defendant has not met this test and therefore the verdict must stand.

■■ Defendant contends that the concurrent sentences of 2 to 6 years for sale and possession of heroin are excessive. Before reaching defendant's claim, we note that possession of heroin is a lesser included offense of the charge of selling heroin. (See *People v. Strong*, 21 Ill.2d 320, 323-24 (1961); *People v. King*, 34 Ill.2d 199, 202 (1966).) We also note that both counts of the indictment were based upon a single act of the defendant. Under such circumstances there can be but one sentence (*People v. Duszkewycz*, 27 Ill.2d 257, 259-62 (1963)), and one judgment of conviction (*People v. Schlenger*, 13 Ill.2d 63, 65-67 (1958)). Accordingly, we reverse the judgment of conviction and vacate the sentence as to the count of the indictment charging defendant with the lesser included offense of possession of heroin. *People v. Lilly*, 56 Ill.2d 493, 495-96 (1974).

Section 411 of the Controlled Substance Act (Ill. Rev. Stat. 1971, ch. 56½, § 1411) notes certain aggravating factors to be considered in sentencing. Those relevant are the unlawful delivery of a Schedule 1 controlled substance and the non-possessory offenses of persons who have

no other visible means of support. Heroin is a Schedule 1 controlled substance and defendant here was unemployed prior to his arrest. Under the circumstances, although the defendant has no prior felony record, we find that the sentence of 2 to 6 years is not excessive.

The judgment of conviction for the possession of heroin is reversed and the sentence imposed thereon is vacated. In all other respects, the judgment is affirmed.

Reversed in part; affirmed in part.

SEIDENFELD and RECHENMACHER, JJ., concur.