THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* THOMAS H. DRISH, Defendant-Appellant.

(No. 12372;

Fourth District—December 17, 1974.

John E. Gambill, of Rantoul, for appellant.

James R. Burgess, Jr., State's Attorney, of Urbana (Thomas L. Knight, Assistant State's Attorney, of counsel), for the People.

Mr. JUSTICE SMITH delivered the opinion of the court:

The defendant was indicted for the violation of sections 33—1 and 33—3 of the Illinois Criminal Code (Ill. Rev. Stat. 1971, ch. 38, pars. 33—1 and 33—3). The first of these sections deals with official bribery, and the second deals with official misconduct. The thrust of the indictment was that defendant accepted money with intent to be influenced in his official capacity as a member of the Champaign Planning Commission to vote on the rezoning proposal for a building known as "Century 21." It is also alleged that he solicited a bribe to bring to a vote in the Planning Commission the question of whether to recommend the rezoning on the property on which the building was located. The jury found the defendant guilty, and he was sentenced to 1 year in an institution other than a penitentiary.

The facts at trial reveal that the defendant was a member of the Planning Commission in June 1972. The members of this commission are appointed by the mayor and approved by the city council and do not take an oath or sign any bond. This commission serves as an advisory body to the city council on zoning matters.

The Architectural Mechanical Systems, Inc. (AMS), was responsible

for the construction of a building called "Century 21" in Champaign, Illinois. AMS officials were informed that they could not carry on certain proposed uses of the property under existing zoning, and a petition for rezoning was filed to change the zoning. Several meetings were held on this rezoning and a final hearing was set for June 20, 1972. On June 19, 1972, the defendant agreed with AMS officials that for $5,000 he would recommend to the other members that they rezone the area to permit the desired use. The facts also show that he took a portion of this money to bring the matter to a vote on June 20, 1972. To prove its case the State introduced a recorded telephone conversation of June 19, 1972, in which one of the AMS officials recorded an incriminating conversation without the permission of the defendant. The AMS official knew that the conversation was being recorded, and the State's Attorney's permission had been secured for the recording.

The State also introduced evidence of another conversation which was recorded on June 20, 1972, via an eavesdropping device and was listened to by various law-enforcement officials. Various witnesses testified as to what was said in this conversation from hearing it via the eavesdropping device. The recording itself was not introduced as it was too garbled.

It is contended that there were four errors committed during the course of this trial: (1) failure to dismiss the charges for the reason that the defendant was not a public official, (2) denial of the motion to suppress the wiretap and eavesdropping evidence, (3) limitation of cross-examination, and (4) denial of the defendant's motion for probation.

As to the first point, it is provided in section 33—1 of the Criminal Code (Ill. Rev. Stat. 1971, ch. 38, par. 33—1) that a person commits bribery when:

> "(d) He receives, retains or agrees to accept any property or personal advantage which he is not authorized by law to accept knowing that such property or personal advantage was promised or tendered with intent to cause him to influence the performance of any act related to the employment or function of any public officer, public employee or juror; or
>
> (e) He solicits any property or personal advantage which he is not authorized by law to accept pursuant to an understanding that he shall influence the performance of any act related to the employment or function of any public officer, public employee or juror."

Official misconduct is defined in section 33—3 as an offense when a public officer commits the following acts:

> "(d) Solicits or knowingly accepts for performance of any act a fee or reward which he knows is not authorized by law."

■■ For the crime of official misconduct and of bribery to be proven against the defendant, the State must prove that the defendant is a public officer. The defendant argues that the Illinois Constitution of 1970 (Ill. Const. (1970), art. XIII, § 3) requires a prospective holder of a state office of other state positions to take an oath. Section 5—3—8 of the Illinois Municipal Code (Ill. Rev. Stat. 1971, ch. 24, par. 5—3—8) also requires city officers to subscribe to an oath, and under section 5—3—9 these officers are required to execute a bond. The city code of Champaign also provides that every officer of the city is required to take an oath and also to file a bond. Furthermore, there are retirement provisions in this code which require all officers and employees to retire upon reaching the age of 68. There are no such provisions or requirements for the members of the Planning Commission. It is therefore urged that the members of the Planning Commission are not public officers.

The evidence also revealed that the Planning Commission was an advisory body only. It is noted in Mechem, A Treatise on the Law of Public Offices and Officers § 4, at 5 (1890), that the most important characteristic distinguishing public employees from others was that the creation of the office involves a delegation of some of the sovereign functions of government and some portion of the sovereignty of the governmental entity. It was also said in *People v. Brady*, 223 Ill.App. 95, *aff'd*, 302 Ill. 576, 135 N.E.2d 87, at page 98 as follows:

" 'One of the most important criteria of a public office is that the incumbent is invested with some of the functions pertinent to sovereignty, for it has been frequently decided that in order to be in office the position must be one to which a portion of the sovereignty of the State, either legislative, executive or judicial, attaches for the time being.   *   *   *' "

See also *People v. Kramer*, 328 Ill. 512, 519, 160 N.E. 60.

The State contends that there is little point in discussing the cases which predate the Criminal Code of 1961, as the definition of public officer was created by the legislature in that year. Section 2—18 (Ill. Rev. Stat. 1971, ch. 38, par. 2—18) defines public officer:

" 'Public officer' means a person who is elected to office pursuant to statute, or who is appointed to an office which is established, and the qualifications and duties of which are prescribed, by statute, to discharge a public duty for the State or any of its political subdivisions."

As this is a criminal prosecution under the Criminal Code the definition of public officer set forth therein is controlling. None of the cases cited by the defendant interpret any statutory definition, nor do they depend on a statutory definition. By the definition in the statute there are only

two issues that must be met—whether the Commission discharged a public duty and secondly, whether the Commission was and the qualifications and duties of its members were established by statute.

As to the first of these issues, the Commission was clearly designed to serve public interest. The powers as set forth in section 11—12—5 of the Municipal Code (Ill. Rev. Stat. 1971, ch. 24, par. 11—12—5) are to prepare and recommend to the corporate authorities a comprehensive plan for the development of the municipality; to recommend changes; to prepare and recommend for specific improvement; to give aid to the municipal officials charged with the direction of the projects and to exercise such other powers as are inherent to the powers granted by that section. It seems irrelevant that the recommendations of the Commission are advisory only as it is a delegation of power, albeit advisory, to the Commission.

The qualifications of the members of the Planning Commission are prescribed by section 11—12—4 (Ill. Rev. Stat. 1971, ch. 24, par. 11—12—4). These members have to be appointed by the mayor or president and are subject to confirmation; they must reside in the city or a contiguous area. Nor can it be argued effectively that this commission was not established by statute. Section 11—12—4 *et seq.* provide that this commission may be established by the city. It was in fact established by the city pursuant to this statutory grant. We see no merit in the contention that as the statute creates the discretionary authority to establish this planning commission, the Commission is not established by statute. Once the city exercised its discretion in establishing the Commission pursuant to the statute, it was established by and pursuant to that statute.

The next issue raised was whether the trial court properly denied the motion to suppress evidence obtained by electronic surveillance. It is urged that under article I, section 6, of the 1970 Illinois Constitution, this eavesdropping information should not have been admitted. This article provides as follows:

> "The people shall have the right to be secure in their persons, houses, papers and other possessions against unreasonable searches, seizures, invasions of privacy or interceptions of communications by eavesdropping devices or other means. * * *"

Defendant notes that there is a long line of cases which express a distaste by the courts for evidence derived from eavesdropping. See *People v. Kurth*, 34 Ill.2d 387, 216 N.E.2d 154, and subsequent cases.

The State contends that the eavesdropping information was obtained pursuant to section 14—1 of the Criminal Code (Ill. Rev. Stat. 1971, ch. 38, par. 14—1 *et seq.*). It is noted also that the *Kurth* decision was under the prior statute and construed the statutory phrase "without the consent

of *any* party thereto" as being the party *against* whom the evidence is used. Subsequently, it is noted that the Illinois legislature adopted section 14—2 of the Code where the eavesdropping is prescribed "unless he does so with the consent of *any one* party to such conversation and at the request of the State's attorney." The *Kurth* decision therefore is not controlling as it was a judicial interpretation of a legislative intent, which legislation has been changed since that decision.

The constitutional prohibition is against *unreasonable* interceptions of communications by eavesdropping devices or other means. The fourth amendment to the United States Constitution again provides a prohibition against *unreasonable* searches and seizures. In *United States v. White*, 401 U.S. 745, 28 L.Ed.2d 453, 91 S.Ct. 1122, the United States Supreme Court affirmed the use of eavesdropping devices against fourth amendment attack. This decision was a five-to-four split with separate concurrences. In arriving at its decision, the court stated as follows at page 749:

> "No warrant to 'search and seize' is required in such circumstances, nor is it when the Government sends to defendant's home a secret agent who conceals his identity and makes a purchase of narcotics from the accused, * * * or when the same agent, unbeknown to the defendant, carries electronic equipment to record the defendant's words and the evidence so gathered is later offered in evidence."

On page 752, the court continues:

> "If the law gives no protection to the wrongdoer whose trusted accomplice is or becomes a police agent, neither should it protect him when that same agent has recorded or transmitted the conversations which are later offered in evidence to prove the State's case."

Furthermore two appellate courts of Illinois have affirmed the use of eavesdrop or wiretap evidence. In *People v. Nahas*, 9 Ill.App.3d 570, 292 N.E.2d 466, tape recordings received by radio in a police radio were held admissible. Similarly in *People v. Holliman*, 22 Ill.App.3d 95, 316 N.E.2d 812, eavesdrop evidence obtained pursuant to the statute was held admissible. In both of these cases similar arguments were made about the constitutionality of use of the evidence obtained, and both courts rejected said arguments. It is noted and we note that the Illinois Constitutional Convention discussed extensively the problem before us. In the record of proceedings of the sixth Illinois Constitutional Convention at page 30, volume VI, the Committee noted that originally the proposed constitutional provision prohibited all "interception of and communications by 'eavesdropping devices or other means'." This provision was changed to

prohibit "unreasonable interceptions" as it would provide more flexibility in the administration of justice.

■■ The circumstances here do not indicate any unreasonable action on behalf of the officers involved. The eavesdropping was approved by the party to whom the solicitation had been made; the officers advised him of what to do and followed strictly the provisions of the statute. There was no fishing expedition, and there was no extended wiretap or eavesdropping. The circumstances under which the information was gathered was not only reasonable but within the statutory provisions.

It is also asserted that there was error in the court's refusal to allow cross-examination of State witnesses who refused to waive immunity testifying before the grand jury. An offer of proof was made as to what these witnesses would testify to. This indicates that the witnesses refused to made a blanket waiver of immunity when called to testify and refused to sign a written waiver of immunity for the reason that their attorney had so advised them. There is no evidence that any witness refused to answer any inquiry based upon his right against self-incrimination. The witnesses did, in fact, testify before the grand jury. There is no evidence that the witnesses were granted immunity or refused to answer any questions.

■■ It is of necessity that the trial court have wide discretion in restricting the scope of cross-examination. Considerable latitude is allowed and it is largely in the discretion of the trial court. (See *People v. Anderson*, 48 Ill.2d 488, 272 N.E.2d 18, at pages 494-95.) It does not appear to this court that the limitations imposed upon the cross-examination were such an abuse of discretion or so severely prejudiced the defendant's rights as to require a new trial. In fact, the offer of proof would tend to show that the line of cross-exmaination would be irrelevant.

■■ It is further urged that the trial court abused its discretion in denying probation to the defendant. It is pointed out that the defendant had never been engaged in other criminal activity and that the chance of the defendant ever engaging in other criminal conduct is highly unlikely. The foregoing may be true; however, as is noted in *People ex rel. Ward v. Moran*, 54 Ill.2d 552, 301 N.E.2d 300, probation is a discretionary matter in the trial court and review is traditionally limited. The issue before a reviewing court is not what it would have done but whether the trial court acted arbitrarily.

■■ Section 117—1 (Ill. Rev. Stat. 1971, ch. 38, par. 117—1) provides that probation may be granted when the "public interest does not require that the defendant receive the penalty provided for the offense". The corresponding provision of the 1973 statute is section 5—6—1 of the Unified Code of Correction (Ill. Rev. Stat. 1973, ch. 38, par. 1005—6—1),

which provides that probation should be denied if it would "deprecate seriousness of the offender's conduct and would be inconsistent with the ends of justice." We cannot say the trial court abused its discretion where a public officer treats the exercise of his public duties as merchandise to be sold over the counter at a price.

For the foregoing reasons, the judgment of the trial court is affirmed.

Affirmed.

SIMKINS, P. J., and TRAPP, J., concur.