THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOHNNIE KNIGHT, Defendant-Appellant.

First District (3rd Division) No. 81—2797

Opinion filed May 8, 1985.

Charles K. Snowden and Harry P. Bush, both of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Timothy J. Joyce, and John L. Malevitis, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE WHITE delivered the opinion of the court:

Following a bench trial, defendant Johnnie Knight was found guilty of each of five counts charged in an information which alleged the following:

"COUNT I: possession of more than 300 grams of a substance containing phencyclidine (PCP) in violation of section 402(a)(7)(iii) of the Controlled Substances Act (Ill. Rev. Stat. 1979, ch. 56½, par. 1402(a)(7)(iii));

COUNT II: possession with intent to deliver more than 300 grams of a substance containing PCP in violation of section 401(a)(7)(III) of the Controlled Substances Act (Ill. Rev. Stat. 1979, ch. 56½, par. 1401(a)(7)(iii));

COUNT III: possession of less than 30 grams of a substance containing cocaine in violation of section 402(b) of the Controlled Substances Act (Ill. Rev. Stat. 1979, ch. 56½, par. 1402(b));

COUNT IV: possession of more than 30 grams of a substance containing cannabis sativa in violation of section 4(d) of the Cannabis Control Act (Ill. Rev. Stat. 1979, ch. 56½, par. 704(d));

COUNT V: possession with intent to deliver more than 30 grams of a substance containing cannabis sativa in violation of section 5(d) of the Cannabis Control Act (Ill. Rev. Stat. 1979, ch. 56½, par. 705(d))."

Defendant was sentenced on count II to eight years' imprisonment and sentenced on count V to five years' imprisonment, the sentences to run concurrently.

The evidence adduced at trial follows. Alfonso Ingram, owner of

the building located at 1551 West 79th Street, Chicago, testified that he has leased the premises to defendant for approximately two years. Defendant operates a record shop in the building.

Officer William Schwartz of the Chicago police department testified that on November 19, 1979, he accompanied Officer Peck, also of the Chicago police department, to the record shop. The officers had a search warrant for the premises and for an individual known as "Pops." They arrived at the location at noon. Finding the door to the premises locked and burglar gates also locked, the officers positioned themselves where they could observe the front door of the shop. One-half hour to one hour later a white Ford Bronco stopped in front of the shop. Defendant and another male exited the car, defendant unlocked the gates and door to the shop, and the two entered the shop. Defendant had a brown paper bag in his hands, larger than a sandwich bag but smaller than a grocery bag. The officers followed defendant into the shop, gave him a copy of the search warrant and proceeded to search the public area of the shop and a room to the rear of the premises. Behind a counter in the record shop proper Officer Schwartz found a paper bag like the one defendant carried into the shop, which contained a substance later identified as cannabis. In the back room, behind a couch, he found a clear plastic bag with white powder later identified as PCP. Officer Schwartz gave the bags to Officer Peck.

Officer Schwartz further testified about the items offered for sale at the shop. These included records, glass tubes, pipes generally used for smoking marijuana or cocaine, cigarette paper, gram scales generally used to weigh narcotics, pimp oil, incense, mirror tiles imprinted with the word cocaine, batteries and small brown manilla envelopes.

On cross-examination, Officer Schwartz testified that as they were preparing to leave the shop a female entered and identified herself as an employee of the defendant. She stated that she was going to take care of the store. Officer Schwartz could not recall whether defendant gave the woman keys to the store before leaving for the police station. Further, the location from which the officers surveyed the front door of the shop was 300 to 400 feet from the shop.

Officer Richard Peck testified that upon searching defendant's person he found in defendant's front pocket two plastic bags containing white powders later identified as cocaine. Officer Peck inventoried the plastic bags found on defendant's person and the other substances found on the premises.[1]

---

[1]Defense counsel stipulated to chain of custody.

Officer Peck further testified that he has participated in approximately 2,000 narcotics arrests and seizures over a period of 17 years as a narcotics investigator. During the same period he has talked to approximately 25 to 30 users of PCP. A dosage of PCP is $\frac{1}{100}$ of a gram and has a street value of 10 to 20 dollars.

Regina Wilborn testified for the defense that she has been employed at Knight's One Stop Record Shop for four years. In November of 1979 two other persons were employed at the shop, Ben Rogers and Angel. Ms. Wilborn had keys to the shop, as did Ben Rogers. All three employees had access to the back room. Ms. Wilborn's direct testimony was that she has lived in the back of the shop for approximately two years.

On cross-examination, Ms. Wilborn admitted that on July 28, 1981, she informed the State's Attorney that she had been living in the back of the shop for one year. She also admitted that she told the State's Attorney that the shop employed only one other employee. Ms. Wilborn further testified that currently defendant keeps some of his property in the back room.

The parties stipulated that Mary Jo Countryman, an expert chemist for the Chicago Crime Lab, examined the contents of the bags seized from defendant's person and shop and found 364 grams of cannabis sativa, 103 grams of cocaine and 638 grams of PCP.

■ On appeal defendant contends that sections 4(d) and 5(d) of the Cannabis Control Act, which embody the offenses of possession and possession with intent to deliver cannabis, and sections 402(7)(iii) and 401(7)(iii) of the Controlled Substances Act, which embody the offense of possession and possession with intent to deliver PCP, are violative of the equal protection and due process clauses of the Illinois and United States constitutions because the sections impose different penalties for the offenses of possession and possession with intent to deliver, whereas the offenses of possession and possession with intent to deliver are duplicative, requiring the same actions. We note that defendant did not question the validity of these sections at trial or in his post-trial motion for a new trial. Defendant has therefore waived these issues. *People v. Luckey* (1969), 42 Ill. 2d 115, 117, 245 N.E.2d 769, *cert. denied* (1970), 397 U.S. 942, 25 L. Ed. 2d 122, 90 S. Ct. 955; *People v. Hale* (1964), 31 Ill. 2d 200, 202, 201 N.E.2d 454.

Moreover, we find the challenges advanced by defendant to be meritless. The equal protection clause does not deny States the power to treat different classes of persons in different ways. (*People v. Bradley* (1980), 79 Ill. 2d 410, 416, 403 N.E.2d 1029.) Only when the law lays an unequal hand on those who have committed intrinsically

the same quality of offense and penalizes one and not the other does the equal protection clause come into play. (*People v. McCabe* (1971), 49 Ill. 2d 338, 341, 275 N.E.2d 407.) That clause requires equality between groups of persons similarly situated; it does not require equality or proportionality of penalties for dissimilar conduct. (*People v. Stokes* (1981), 102 Ill. App. 3d 909, 917, 430 N.E.2d 370.) A defendant convicted of possession of cannabis or PCP is not similarly situated to one convicted of possession with intent to deliver cannabis or PCP. By the very definition of the offenses, those accused of one would be dissimilarly situated from those accused of the other.

Citing *People v. Kline* (1976), 41 Ill. App. 3d 261, 354 N.E.2d 46, defendant maintains that persons convicted of possession and those convicted of possession with intent to deliver are similarly situated because intent to deliver may be shown by possession of large amounts of the drugs in question, whereas the possession statutes do not place upper limits on the amounts of the drugs upon which convictions for possession may rest. Defendant concludes that a person who has in his possession a large amount of drugs may be convicted either of possession or of possession with intent to deliver.

A mental state is seldom subject to direct proof and must generally be inferred from circumstances which warrant the inference. (41 Ill. App. 3d 261, 266.) While courts have held that possession of a drug in excess of an amount normally intended for personal use is circumstantial evidence from which a jury may infer that the substance was possessed with intent to deliver (*People v. Atencia* (1983), 113 Ill. App. 3d 247, 250, 446 N.E.2d 1243, *cert. denied* (1983), 464 U.S. 917, 78 L. Ed. 2d 261, 104 S. Ct. 283), this is a rebuttable presumption. (*United States v. Brischetto* (8th Cir. 1976), 538 F.2d 208.) Moreover, intent to deliver may also be inferred from other circumstances. In *People v. Lewis* (1980), 83 Ill. 2d 296, 415 N.E.2d 319, defendant's conviction of possession of cannabis with intent to deliver was affirmed where an undercover police officer arranged a rendezvous with defendant for the purpose of purchasing cannabis from defendant, defendant arrived at the rendezvous in a van containing the cannabis and a second police officer handed the defendant a portion of the agreed purchase price. Defendant was placed under arrest before the cannabis was physically transferred to the police officers. In *People v. Hunter* (1984), 124 Ill. App. 3d 516, 464 N.E.2d 659, defendant's conviction for possession of a controlled substance with intent to deliver was affirmed where State witnesses testified that several addicts approached defendant's parked automobile and made exchanges with defendant shortly before he was arrested in the automobile that had

pills scattered on the floor and in the locked trunk.

We cannot agree with defendant's contention that the same factors underlie both possession and possession with intent to deliver, and that the latter does not involve an additional element. We conclude that persons convicted of possession are dissimilarly situated from those convicted of possession with intent to deliver and consequently equality or proportionality of penalties for the two groups is not required.

■ We also find meritless defendant's contention that sections 401(7)(iii) and 402(7)(iii) are violative of the due process clauses because they provide a stiffer penalty for possession of PCP than for possession with intent to deliver PCP, whereas the legislature intended to punish more severely those who traffic in and deliver drugs than those who merely possess them. Section 401 provides in pertinent parts:

"[I]t is unlawful for any person knowingly to manufacture or deliver, or possess with intent to manufacture or deliver, a controlled substance. Any person who violates this Section with respect to:

(a) the following controlled substances and amounts *** is guilty of a Class X felony.
* * *

(7) 300 grams or more of any substance containing any of the following substances, their salts, isomers and salts of isomers:
* * *

(iii) 1(1-Phenylcyclohexl)-piperidine (Phencyclidine, PCP) ***."
(Ill. Rev. Stat. 1979, ch. 56½, par. 1401.)

Section 402 provides in pertinent part:

"[I]t is unlawful for any person knowingly to possess a controlled substance. Any person who violates this Section with respect to:

(a) the following controlled substances and amounts *** is guilty of a Class 1 felony for which an offender may not be sentenced to death. The fine for violation of this subsection (a) shall not be more than $100,000:
* * *

(7) 300 grams or more of any substance containing any of the following substances, their salts, isomers and salts of isomers:
* * *

(iii) 1-(1-Phenylcyclohexl)-piperidine (Phencyclidine, PCP) ***." (Ill. Rev. Stat. 1979, ch. 56½, par. 1402.)

Since the sentence for a Class X felony is not less than six years and

not more than 30 years, whereas the sentence for a Class 1 felony is not less than four years and not more than 15 years, possession with intent to deliver PCP carries a heavier penalty than possession of PCP. This statutory scheme is rationally related to the objective of the legislature to punish those who traffic in and deliver drugs more severely than those who merely possess them. We conclude that sections 401(7)(iii) and 402(7)(iii) do not violate the due process clauses.

■ Defendant next contends that section 5—8—1 of the Unified Code of Corrections (Ill. Rev. Stat. 1979, ch. 38, par. 1005—8—1) is unconstitutional when applied to the Cannabis Control Act and the Illinois Controlled Substances Act because the maximum term of imprisonment which may be imposed pursuant to section 5—8—1 for a Class 1 felony (15 years—possession of PCP) or a Class 4 felony (three years—possession of cannabis) is greater than the minimum term which may be imposed for a Class X felony (six years—possession with intent to deliver PCP) or a Class 3 felony (two years—possession with intent to deliver cannabis). Defendant concludes that pursuant to section 5—8—1 the court might have sentenced him more severely for possession of cannabis or PCP than for possession with intent to deliver cannabis or PCP. We note that defendant did not challenge the validity of section 5—8—1 in the lower court. The issue is therefore waived. (*People v. Luckey* (1969), 42 Ill. 2d 115, 245 N.E.2d 769; *People v. Hale* (1964), 31 Ill. 2d 200, 201 N.E.2d 454.) Moreover, defendant does not have standing to challenge the constitutional validity of the sentencing provision since he is not directly affected by the statute. (*People v. Mayberry* (1976), 63 Ill. 2d 1, 6, 345 N.E.2d 97, *cert. denied* (1976), 429 U.S. 828, 50 L. Ed. 2d 92, 97 S. Ct. 87.) Although defendant was convicted of possession of cannabis and PCP, the trial court did not impose sentence on those convictions. Defendant cannot here argue that the trial court might have sentenced him to a greater term of imprisonment on the possession convictions than on the possession with intent to deliver convictions.

■ Defendant next contends that section 411(2) of the Controlled Substances Act (Ill. Rev. Stat. 1979, ch. 56½, par. 1411(2)) is unconstitutional as applied to section 5(d) of the Cannabis Control Act because it allows the trial court to take into account the quantity of the controlled substance twice, once in finding intent to deliver and again in the sentencing process.[2] Section 411(2) provides that the sentencing

---

[2]The same argument is made with respect to section 4(d) of the Cannabis Control Act and section 402(7)(iii) of the Controlled Substances Act. Our conclusion here disposes of the argument.

court may consider offenses involving unusually large quantities of controlled substances, as measured by their wholesale value at the time of the offense, as indicative of the type of offenses which warrants the most severe penalties. Again, we note that defendant did not question the validity of the statute at trial. We further note that section 411(2) is part of the Controlled Substances Act and is not applicable to section 5(d) of the Cannabis Control Act. Lastly, a party who attacks a statute as unconstitutional must bring himself within the class aggrieved by the alleged unconstitutionality. (*People v. Mayberry* (1976), 63 Ill. 2d 1, 6, 345 N.E.2d 97.) Defendant has neither alleged nor shown that the trial court took into consideration the quantity of PCP in sentencing defendant on the conviction of possession with intent to deliver PCP. We note that the sentence imposed by the trial court, eight years, is only two years above the minimum sentence for a Class X felony. We conclude that defendant lacks standing to attack the constitutionality of section 411(2).

We next determine whether the trial court could properly convict defendant on all counts of the information. The trial court found defendant guilty of possession of cocaine in violation of section 402(b) of the Controlled Substances Act and possession of PCP in violation of section 402(a)(7)(iii) of the same Act. The simultaneous possession of more than one type of controlled substance constitutes a single offense for which there can be only one conviction. (*People v. Manning* (1978), 71 Ill. 2d 132, 137, 374 N.E.2d 200; *People v. Tonaldi* (1981), 98 Ill. App. 3d 528, 533, 424 N.E.2d 1200.) Defendant's conviction for possession of cocaine arose from the same act of possession which formed the basis for his conviction of possession of PCP. Both convictions cannot stand. Since the conviction for possession of cocaine constitutes a lower class felony, that conviction will be vacated. 98 Ill. App. 3d 528, 533, 424 N.E.2d 1200.

Further, defendant cannot stand convicted of both possession with intent to deliver cannabis and possession of cannabis, and both possession with intent to deliver PCP and possession of PCP. We note that possession of cannabis is a lesser included offense of possession with intent to deliver cannabis, and that possession of PCP is a lesser included offense of possession with intent to deliver PCP. (*People v. Jones* (1979), 75 Ill. App. 3d 214, 228, 393 N.E.2d 1132, *cert. denied* (1980), 445 U.S. 968, 64 L. Ed. 2d 246, 100 S. Ct. 1662.) We also note that the counts of the indictment related to cannabis were based upon a single act of the defendant, as were the counts of the indictment related to PCP. Under such circumstances there can be only one conviction on the counts involving cannabis and one conviction on the

counts involving PCP. (*People v. Schlenger* (1958), 13 Ill. 2d 63, 147 N.E.2d 316; *People v. Jones* (1979), 75 Ill. App. 3d 214, 228-29, 393 N.E.2d 1132; *People v. Holliman* (1974), 22 Ill. App. 3d 95, 103, 316 N.E.2d 812.) Accordingly, we vacate the convictions for possession of cannabis and possession of PCP.

■ Defendant next contends that he was not proved guilty beyond a reasonable doubt of possession with intent to deliver PCP and cannabis. We first determine whether the State established that defendant unlawfully possessed PCP and cannabis. To prove unlawful possession, the State was required to show that defendant knew of the presence of the drugs and that the drugs were in the immediate and exclusive control of defendant. (*People v. Nettles* (1961), 23 Ill. 2d 306, 307, 178 N.E.2d 361, *cert. denied* (1962), 369 U.S. 853, 8 L. Ed. 2d 12, 82 S. Ct. 939.) Where narcotics are found on premises under defendant's control, it may be inferred that he had the requisite knowledge and possession, absent other facts and circumstances that might leave a reasonable doubt as to guilt in the minds of the jury. (*People v. Nettles* (1961), 23 Ill. 2d 306, 308, 178 N.E.2d 361; *People v. Atencia* (1983), 113 Ill. App. 3d 247, 250, 446 N.E.2d 1243.) Whether there is possession and whether there is knowledge are questions of fact to be determined by the trier of facts and its findings will not be disturbed on review unless the evidence is so palpably contrary to the verdict or so unreasonable, improbable or unsatisfactory as to create a reasonable doubt of guilt. *People v. Atencia* (1983), 113 Ill. App. 3d 247, 250, 446 N.E.2d 1243.

In the instant case, defendant is the lessee of the premises located at 1551 West 79th Street and operates a record shop thereon. Defendant's landlord testified that defendant is the only person who possesses keys to the premises. Police Officers Peck and Schwartz testified that on November 19, 1979, they arrived at the record shop at approximately 12 p.m. to find the door locked and burglar gates in position. Defendant arrived at the shop shortly thereafter, unlocked the burglar gates and front door and entered. The officers followed defendant into the shop and found narcotics in the shop and on defendant's person. This evidence strongly suggests that defendant had control of the premises.

We are mindful of the testimony of Regina Wilborn that she had lived in the rear of the premises for two years and that at least one other employee of defendant had keys to the shop and access to the back room. However, on cross-examination, Ms. Wilborn admitted that in an interview on July 28, 1981, she told the State's Attorney that she had been living in the rear of the shop for one year. The trial

court evidently disbelieved Ms. Wilborn's testimony that she lived in the back room at the crucial time period and accepted the prosecutor's evidence as true. We conclude that the evidence is not so palpably contrary to the trial court's finding or so unreasonable, improbable or unsatisfactory as to create a reasonable doubt of defendant's guilt. Consequently, we will not disturb the trial court's finding that defendant had control of the premises and unlawfully possessed PCP and cannabis.

■ We next determine whether defendant had the requisite intent to deliver PCP or cannabis. It is a reasonable inference that possession of an amount of contraband in excess of any amount which could be viewed as for personal use is possessed with intent to deliver. (*People v. Atencia* (1983), 113 Ill. App. 3d 247, 250, 446 N.E.2d 1243; *People v. Munoz* (1982), 103 Ill. App. 3d 1080, 1082, 432 N.E.2d 370.) The bags found in defendant's constructive possession contained 364 grams (more than three-quarters of a pound) of cannabis and 638 grams (more than 1⅓ pound) of PCP, amounts far in excess of any which could be normally intended for personal use. The trial court could properly infer and conclude that the PCP and cannabis were possessed with intent to deliver.

■ Defendant next contends that the complaint for search warrant was insufficient to permit a determination of probable cause and the search warrant predicated thereon should have been quashed. In issuing a search warrant, the task of the magistrate is to

> "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for *** conclud[ing]' that probable cause existed." (*Illinois v. Gates* (1983), 462 U.S. 213, 238-39, 76 L. Ed. 2d 527, 548, 103 S. Ct. 2317, 2332.)

After-the-fact scrutiny by a court of the sufficiency of the complaint may not take the form of *de novo* review. A magistrate's determination of probable cause should be paid great deference. *Illinois v. Gates* (1983), 462 U.S. 213, 236, 76 L. Ed. 2d 527, 547, 103 S. Ct. 2317, 2331.

In the case at bar, the complaint for search warrant provides a substantial basis for the issuance of the warrant. The complaint was based upon information from a cooperating individual who said he purchased cocaine from defendant on numerous occasions while in the

record shop. The last purchase of cocaine occurred on November 18, 1979, at approximately 5 p.m. The individual gave defendant $50 and received a folded square of white paper containing a white powder. He snorted the white powder and received the same effects that he feels when he snorts cocaine. When the individual left the store at 5 p.m., defendant had a large quantity of cocaine in his possession. The complaint for search warrant was filed November 19, 1979.

Additionally, the cooperating individual was known to the affiant. The individual had given affiant information pertaining to narcotics on three occasions. On each occasion the information led to at least one arrest and the seizure of narcotics. Further, the arrests resulted in two convictions, with one case pending.

We conclude that the judge issuing the warrant had a substantial basis for concluding that probable cause to search the record shop existed. The search warrant was therefore valid. *Illinois v. Gates* (1983), 462 U.S. 213, 76 L. Ed. 2d 527, 103 S. Ct. 2317.

Defendant contends that *Gates* should not be applied retroactively. That issue has been decided adversely to defendant in *People v. Tisler* (1984), 103 Ill. 2d 226, 246-48, 469 N.E.2d 147.

■■ Defendant next contends that the search warrant was overbroad because it gave the police the right to search the entire store, whereas there was no showing that the front of the store was used in the commission of any crime. We disagree. In *People v. Bell* (1972), 53 Ill. 2d 122, 290 N.E.2d 214, defendant was convicted of unlawful possession of heroin found during a search of the apartment defendant occupied with his mother and several others who rented bedrooms from the mother. The search warrant in *Bell* designated the entire apartment as the premises to be searched. On appeal, Bell maintained that this designation was too broad and should have been limited to his bedroom. The court rejected Bell's argument and held that the search warrant was not overly broad where the apartment was one unit and it appeared that defendant had access to its various parts.

In the instant case the search warrant designated the front of the record shop and the storage area (rear room) as the premises to be searched. Said designation was not overly broad where the front of the shop and storage area were leased by defendant as a single unit for business use and defendant had access to both areas.

■■ Defendant next contends that the trial court should have granted his motion to suppress the evidence seized from his person because that portion of the warrant allegedly authorizing a search of his person contained a description which did not correspond to his description, and that portion authorizing a search of the record shop

could not be construed to give the officers authority to search every individual in the shop. We note that the only contraband seized from defendant's person was the cocaine which served as a basis for his conviction of possession of cocaine in violation of section 402(b) of the Controlled Substances Act. Since we vacate defendant's conviction for possession of cocaine, we need not determine whether the search of defendant's person was legal and whether the cocaine was improperly admitted into evidence.

 Defendant next contends that it was error to allow Officer Peck to testify regarding the dosage and market value of PCP. Defendant maintains that Officer Peck was not qualified to testify as an expert in these matters. The question of qualification of an expert witness rests largely in the discretion of the trial court, and the test of qualification is necessarily a relative one, depending upon the subject under investigation and the fitness of the particular witness. (*People v. Fiorita* (1930), 339 Ill. 78, 89, 170 N.E. 690.) The decision of the trial court is subject to reversal only if it constituted an abuse of discretion. *People v. Free* (1983), 94 Ill. 2d 378, 410, 447 N.E.2d 218.

We believe that the trial court properly exercised its discretion in receiving Officer Peck's testimony regarding the dosage and market value of PCP. Officer Peck had been employed as a narcotics investigator by the Chicago police department for more than 16 years. During that period he participated in approximately 2,000 narcotics arrests and 2,000 narcotics seizures. He also made approximately 200 to 300 undercover purchases of narcotics. Further, he talked to hundreds of users of narcotics and in particular 25 to 30 users of PCP. We cannot say that the trial court abused its discretion in finding that Officer Peck was competent to testify as to the dosage and value of PCP.

During closing argument the State's Attorney remarked that witness Regina Wilborn had been coming to court with defendant and was therefore biased in defendant's favor. Defense counsel's objection was overruled by the trial court on the basis that "this is argument." Defendant now contends that the trial court improperly took into consideration the fact that witness Regina Wilborn accompanied defendant on each occasion defendant came to court in finding defendant guilty on all counts of the information. Defendant admits that the trial "court did not say specifically that it took judicial notice of Wilborn's coming to court with Knight nor that it viewed such as impeaching." But defendant contends that since the court found defendant guilty, it can be assumed that the court did take judicial notice of it and found that Regina Wilborn had been impeached.

 When the trial judge is the trier of the facts, every presump-

tion will be accorded that the judge considered only admissible evidence and discarded inadmissible evidence in reaching his conclusion. (*People v. Robinson* (1964), 30 Ill. 2d 437, 439, 197 N.E.2d 45.) We find no indication in the record that the trial judge took into consideration the fact that Regina Wilborn accompanied defendant to court. Moreover, we find in the record competent evidence that defendant exercised control over the premises where large quantities of PCP and cannabis were discovered. The trial judge could properly infer that defendant knew of the presence of the drugs and that the drugs were in defendant's immediate and exclusive control. Further, the trial court could infer from the quantities involved that defendant possessed the PCP and cannabis with intent to deliver. The admissible evidence was thus sufficient to sustain defendant's convictions.

▌ Defendant next contends that count V of the information which charged defendant with possession with intent to deliver more than 30 grams of a substance containing cannabis was insufficient to charge an offense because it failed to state that the amount of cannabis was "not more than 500 grams," and it charged defendant with violating the Controlled Substances Act rather than the Cannabis Control Act.[3] The information cited the correct chapter and section of the Illinois Revised Statutes, but misstated the name of the Act. The relevant section of the Cannabis Control Act provides:

"It is unlawful for any person knowingly to manufacture, deliver, or possess with intent to deliver or manufacture, cannabis. Any person who violates this section with respect to:
\* \* \*

(d) more than 30 grams but not more than 500 grams of any substance containing cannabis is guilty of a Class 3 felony \*\*\*." Ill. Rev. Stat. 1979, ch. 56½, par. 705(d).

Defendant made no motion to quash the indictment prior to trial and made no attack at all upon the indictment until this appeal. Technical objections to an indictment cannot first be heard subsequent to trial, and having failed to raise these objections by an appropriate motion in the trial court defendant must be deemed to have waived them. *People v. Clark* (1963), 30 Ill. 2d 67, 73, 195 N.E.2d 157; *People v. Barney* (1959), 15 Ill. 2d 503, 507, 155 N.E.2d 615.

Defendant maintains that an allegation that a defendant possessed

---

[3]Defendant advances the same argument concerning count IV of the information which charged defendant with possession of more than 30 grams of cannabis. We need not address this contention, however, since we reverse defendant's conviction on count IV.

"not more than 500 grams of any substance containing cannabis" is an essential element of a violation of section 5(d), and it cannot be waived. We are not aware of any courts in Illinois which have considered the question whether a gram amount is an essential element which must be alleged in an indictment charging possession with intent to deliver cannabis, in violation of section 5 of the Cannabis Control Act. However, in *People v. Clutts* (1976), 43 Ill. App. 3d 366, 370, 356 N.E.2d 1367, the appellate court held that a gram amount is an essential element to be alleged in order for an indictment to charge and support a conviction for a Class 1 felony under section 401 of the Controlled Substances Act. Section 401 provided graduated penalties based upon the amount of amphetamines found in an individual's possession, making possession of 200 grams or more of any substance containing amphetamines with intent to deliver a Class 1 felony and possession of any other amount with intent to deliver a Class 3 felony.

We agree with the holding of the court in *Clutts* that an allegation of a gram amount is an essential element to charge a higher grade offense. We therefore hold that an allegation that an individual possessed more than 30 grams of any substance containing cannabis is an essential element which must be alleged in an information charging a violation of section 5(d) of the Cannabis Control Act. However, an allegation that the individual possessed "not more than 500 grams of any substance containing cannabis" is unnecessary, as that fact will not affect the grade of the offense. Such an allegation would be superfluous.

We conclude that an allegation that an individual possessed "not more than 500 grams of any substance containing cannabis" is not an essential element in an indictment charging a violation of section 5(d), and that the indictment in the instant case was sufficient to charge an offense.

Lastly, defendant contends that he should be granted a new trial because he did not receive effective assistance of counsel. He cites as examples of counsel's incompetence counsel's failure to move the trial court to declare unconstitutional the statutes upon which defendant's convictions were premised, counsel's failure to move to dismiss counts IV and V of the information as insufficient to charge defendant with possession of cannabis and possession of cannabis with intent to deliver, counsel's agreement to entry of a finding of guilty on counts I and IV of the information, and the manner in which counsel handled the motion to quash the search warrant and suppress the evidence obtained pursuant thereto.

In order to prove a charge of ineffective assistance of counsel, a

defendant must demonstrate not only that his attorney was incompetent but also that this incompetence was prejudicial to the outcome of his case. (*People v. Harris* (1985), 105 Ill. 2d 290, 304, 473 N.E.2d 1291; *People v. Royse* (1983), 99 Ill. 2d 163, 166-68, 457 N.E.2d 1217.) Proof of prejudice may not be based upon conjecture or speculation as to the outcome of the case if defendant had received better representation. Further, if the alleged incompetence is purely a matter of professional judgment, it does not support a claim of ineffective representation. *People v. Smith* (1981), 93 Ill. App. 3d 26, 33, 416 N.E.2d 814.

In the present case we cannot agree that defendant received ineffective assistance of counsel. Inasmuch as we hold that the statutes upon which defendant's convictions are premised are not violative of the equal protection or the due process clause, defendant was not prejudiced by counsel's failure to move the trial court to declare the statutes unconstitutional. Neither was defendant prejudiced by counsel's failure to move to dismiss counts IV and V of the information. Count V of the information was sufficient to charge the offense of possession of cannabis with intent to deliver and defendant's conviction on count IV must be vacated as indicated above. Additionally, defendant was not prejudiced in counsel's presentation of the motion to quash the search warrant and suppress the evidence obtained pursuant thereto. The probable cause showing for the issuance of the search warrant was compelling. The trial court would not have been justified in quashing the warrant or suppressing the evidence obtained pursuant thereto. Lastly, since we vacate the convictions on counts I and IV of the information, counsel's alleged agreement, or more accurately, lack of objection to entry of judgment of guilty on counts I and IV, did not prejudice defendant.

We conclude that counsel's representation was not prejudicial to the outcome of defendant's case.

For the aforementioned reasons, we affirm the convictions on counts II and V of the information and vacate the convictions on counts I, III and IV.

Affirmed in part, vacated in part.

McNAMARA and RIZZI, JJ., concur.